1
2
3
4
5
6
7
8

**MARTIN D. SINGER (BAR NO. 78166)**
mdsinger@lavelysinger.com
**T. WAYNE HARMAN (BAR NO. 254089)**
wharman@lavelysinger.com
**JAKE A. CAMARA (BAR NO. 305780)**
jcamara@lavelysinger.com
**LAVELY & SINGER, P.C.**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615

Attorneys for Plaintiff
JEFF DUNHAM

9
10
11

### UNITED STATES DISTRICT COURT

### CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| JEFF DUNHAM, as an individual and in his capacity as TRUSTEE OF THE JEFF DUNHAM TRUST DATED MARCH 24, 2010,<br><br>Plaintiff,<br><br>v.<br><br>RAYMOND LEI, an individual; OOSHIRTS, INC., d/b/a TEECHIP and TEECHILI; and DOES 1-50,<br><br>Defendants. | CASE NO.: 2:20-CV-03716<br><br>**COMPLAINT FOR:**<br>1. **COPYRIGHT INFRINGEMENT (17 U.S.C. §§ 101 *et seq.*)**<br>2. **TRADEMARK AND TRADE DRESS INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**<br>3. **TRADEMARK AND TRADE DRESS DILUTION (15 U.S.C. §1125(c))**<br>4. **FALSE DESIGNATION OF ORIGIN (15 U.S.C. §1125(a))**<br>5. **COMMON LAW UNFAIR COMPETITION**<br>6. **CONTRIBUTORY COPYRIGHT INFRINGEMENT**<br>7. **CONTRIBUTORY TRADEMARK AND TRADE DRESS INFRINGEMENT AND COUNTERFEITING**<br>8. **VICARIOUS COPYRIGHT INFRINGEMENT**<br>9. **VICARIOUS TRADEMARK AND TRADE DRESS INFRINGEMENT AND COUNTERFEITING**<br>10. **VIOLATION OF CALIFORNIA CIVIL CODE § 3344**<br>11. **COMMON LAW MISAPPROPRIATION OF THE RIGHT OF PUBLICITY**<br><br>**DEMAND FOR JURY TRIAL** |

4689-7

COMPLAINT

1         Plaintiff Jeff Dunham, individually and as trustee of The Jeff Dunham Trust Dated

2   March 24, 2010 ("Plaintiff"), by his attorneys Lavely & Singer, P.C. for its Complaint

3   against Defendants Raymond Lei ("Lei"), Ooshirts, Inc. d/b/a Teechip and Teechili

4   ("Ooshirts"), and DOES 1-50 (collectively, "Defendants"), alleges as follows:

5

6                  **NATURE OF THE ACTION**

7         1.    The current COVID-19 pandemic is one of the deadliest and most far-

8   reaching tragedies in modern times, and individuals and entities who have attempted to

9   profit off of this disaster have been universally condemned and reviled. This case arises

10  out of the outrageous, blatant, and malicious campaign of Defendants Raymond Lei and

11  his company, Ooshirts, to fraudulently profit off of this tragedy through the indisputable

12  infringement and misappropriation of the intellectual property and persona of Jeff

13  Dunham, one of the most successful comedians of all time, by selling counterfeit t-shirts

14  and other consumer products.

15        2.    This case is simple and the facts are indisputable: Defendants are marketing,

16  advertising, promoting, manufacturing, selling, and profiting off of consumer products,

17  including COVID-19 face masks and t-shirts, that clearly incorporate and exploit the

18  world-famous ventriloquism characters that Plaintiff Jeff Dunham spent years to develop,

19  which are protected by registered copyrights and trademarks owned by the Plaintiff, and

20  which contain protectable trade dress. To add insult to injury, in order to attract

21  consumers to their websites and help sell their counterfeit products, Defendants have

22  exploited the name, photograph, image and/or likeness of Jeff Dunham himself, which

23  has caused significant consumer confusion and led fans of the Plaintiff to ask him

24  whether he was improperly trying to profit off of the COVID-19 pandemic by selling

25  these COVID-19 products. This confusion has caused, and continues to cause, great harm

26  to Plaintiff's reputation and brand.

27        3.    While Defendants' attempt to profit off the COVID-19 pandemic is

28  particularly reprehensible, it is just the most recent example of their ongoing campaign of

1  illegal conduct. Defendants have been engaging in this same conduct for years, which can
2  be equated to a game of "whack-a-mole": i) Dunham identifies infringing products on
3  Defendants' websites and sends a DMCA Notice demanding that they be taken down, (ii)
4  Defendants take down the infringing products, and (iii) Defendants then put up for sale
5  new infringing products, and continue to misappropriate Dunham's name, photograph,
6  image and likeness to sell those products, starting the process all over again. Enough is
7  enough.

8    4.    Ripping off and exploiting the intellectual property of third parties, and
9  duping customers into believing that they are purchasing legitimate merchandise when
10  they're actually getting counterfeits, is, upon information and belief, Defendants'
11  *business model*. Defendant Ooshirts, for example, has been sued on multiple occasions
12  for the same conduct (including by HBO for selling knock off *Game of Thrones*
13  merchandise), thus further evidencing that Defendants' illegal acts are knowing and
14  willful.

15    5.    As an example of Defendants' most recent unlawful conduct, one of
16  Dunham's earliest, most beloved, and most well-known characters is Walter, a crotchety
17  old man, who has a brash and sarcastic view of the world. Walter's grumpy nature is
18  immediately evident from the physical persona of the character, as seen in this picture:



25    6.    In a shameful effort to profit off the COVID-19 pandemic, Defendants have
26  sold and continue to sell overpriced face masks that display a counterfeited image of
27  Walter wearing a blue hospital face mask, as seen in this screenshot from the
28  www.teechip.com website on which Defendants have sold the infringing products:

2

COMPLAINT

7.      This is just the tip of the iceberg. Defendants' websites have listed *over 1000* different infringing products for sale (including t-shirts, sweatshirts, blankets, mugs, and other consumer products) that feature Jeff Dunham's beloved characters, including Achmed, Bubba J, Peanut, and Jose Jalapeno on a Stick, and Defendants have even set up a *separate section of one of their websites* for all of their Jeff Dunham related-products. Upon information and belief, Defendants have even cropped photographs of Dunham's face onto other individuals in order to sell their counterfeited products.

8.      Accordingly, through this action, Plaintiff seeks to recover the substantial compensatory, punitive, and statutory damages to which he is entitled as a result of Defendants' intentional and wrongful conduct, which includes the blatant and pervasive infringement of his intellectual property and misappropriation of his valuable publicity rights.

## THE PARTIES

9.      Plaintiff Jeff Dunham is an individual residing in the County of Los Angeles, State of California, and conducting business in the County of Los Angeles, State of California. Plaintiff is the Trustee of The Jeff Dunham Trust Dated March 24, 2010 (the "Trust"). The Trust is organized according to California law whose situs is within this District.

3

10. Plaintiff is informed and believes, and thereon alleges, that Defendant Lei is an individual residing in the County of Santa Clara, State of California, and conducting business in the County of Los Angeles, State of California.

11. Plaintiff is informed and believes, and thereon alleges, that Defendant Ooshirts is a California Corporation with its principal place of business at 39899 Balentine Drive, Suite 220, Newark CA 94560, and conducting business in the County of Los Angeles, State of California. Plaintiff is further informed and believes, and on that basis alleges, that Ooshirts is doing business as www.teechip.com and www.teechili.com, and that they are not separate legal entities. Plaintiff is further informed and believes, and on that basis alleges, that, at all times relevant hereto, Defendant Lei directly owned, controlled, dominated, used, managed and/or operated Ooshirts, www.teechip.com, and www.teechili.com.

12. Plaintiff is informed and believes and based thereon alleges that the fictitiously named defendants sued herein as Does 1 through 50, inclusive, and each of them, were in some manner responsible or legally liable for the events, actions, transactions, and circumstances alleged herein.  The true names and capacities of said fictitiously named defendants, whether individual, corporate, associate, or otherwise, are presently unknown to Plaintiff, and Plaintiff will seek leave of this Court to amend this Complaint to assert the true names and capacities of said fictitiously named defendants when same have become known to Plaintiff.  Hereinafter all defendants, including the Doe Defendants, will sometimes be referred to collectively as "Defendants."

13. Plaintiff is informed and believes and based thereon alleges that Defendants, and each of them, were the agents, employees, partners, joint-venturers, co-conspirators, owners, principals and employers of the remaining Defendants, and each of them, and are, and at all times herein mentioned were, acting within the course and scope of that agency, partnership, employment, conspiracy, ownership or joint venture.  Plaintiff is further informed and believes and based thereon alleges that the acts and conduct herein

COMPLAINT

alleged of each such Defendant were known to, authorized by, and/or ratified by the other Defendants, and each of them.

14.     Plaintiff is informed and believes and based thereon alleges that Lei and one or more of Doe Defendants 1 through 50 are, and at all times material hereto were, the principal members, managers, shareholders, officers, directors and/or owners of Ooshirts, Inc. in that Lei and the applicable Doe Defendants at all times relevant hereto directly owned, controlled, dominated, used, managed and operated Ooshirts, Inc.  Plaintiff is further informed and believes and based thereon alleges that at all times material hereto, Ooshirts, Inc. failed to follow corporate formalities and maintain a corporate identity separate and distinct from Lei and the applicable Doe Defendants, and Ooshirts, Inc. has been a business conduit and alter ego of Lei and the applicable Doe Defendants. Adherence to the fiction of the separate legal existence of Ooshirts, Inc., on the one hand, and Lei and the applicable Doe Defendants, on the other hand, as entities distinct from one another would permit abuse of the corporate privilege, would promote injustice, and would sanction a fraud upon Plaintiff.

15.     Plaintiff is informed and believes and thereupon alleges that at all relevant times, Defendants acted in concert, conspired and agreed among themselves to commit the wrongful acts and practices alleged in this Complaint, and that such wrongful acts and practices were committed pursuant to and in furtherance of such conspiracy and agreement, and with the consent and approval of each of the Defendants.  Plaintiff is informed and believes, and thereupon alleges, that each of the Defendants are liable as a direct participant, co-conspirator and/or aider and abettor of the wrongful acts and practices alleged herein.

## JURISDICTION AND VENUE

16.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. sections 1331 and 1338 because this action arises under the federal Lanham Act, 15 U.S.C. §§ 1051, *et seq*., and the United States Copyright Act, 17 U.S.C. §§ 101, *et*

*seq.*

17.     This Court has personal jurisdiction over Defendants because they regularly transact, do and solicit business in this District, including by: using or causing to be used, offering to sell or causing to be offered for sale, manufacturing, and/or selling directly a variety of products that infringe Plaintiff's copyrights and trademarks to customers in the United States, including in California and in this District. Defendants have committed tortious acts within the state, including this District, causing injury to Plaintiff as alleged further herein.  Upon information and belief, Defendants derive substantial revenue from interstate commerce.

18.     This Court has supplemental jurisdiction over Plaintiff's claims arising under the laws of California pursuant to 28 U.S.C. § 1367(a) because these claims are so related to Plaintiff's claims under federal law that they form part of the same case or controversy and derive from a common nucleus of operative fact.

19.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because Defendants are persons over whom this Court has personal jurisdiction and because a substantial part of the claims arose in this District.

## GENERAL ALLEGATIONS

### A.     Jeff Dunham Is an Award-Winning Ventriloquist and Comedian

20.     Jeff Dunham is one of the most popular and successful ventriloquists and stand-up comedians in the world. He regularly tours and performs live, and has appeared in both television programs and feature films. He is perhaps best known for his DVD comedy specials, which have sold tens of millions of copies and were written and executive produced by Dunham and feature Dunham's comedic performances as a ventriloquist. These specials include *Arguing With Myself*, *Spark of Insanity*, *Minding the Monsters* and a *Very Special Christmas Special*.  His 2015 stand-up special, *Unhinged in Hollywood*, debuted on NBC Primetime and ranked as the time period's top non-sports

6

program on the Big 4 in every key measure. The special was re-broadcast on Comedy Central and was the top rated special of the year for the entire network.

21.    Dunham's contribution to the world of show business and comedy was recognized in 2017 when he received a star on the "Hollywood Walk of Fame," commemorating over two decades of superstardom. He has 10 million followers on Facebook and over 2.1 million YouTube subscribers, amassing well over a billion views. Dunham has also been awarded "Billboard's Top Comedy Tour" for three years based on box office sales.  Accordingly, Dunham has developed sufficient skills, reputation, and talent to create considerable commercial value in his identity, and it there is substantial consumer recognition, good will and monetary value in the Jeff Dunham brand.

22.    As a result of Dunham's hard-earned fame and success, his name, photograph, image and/or likeness have the ability to attract substantial consumer attention and evoke a desired response in a particular consumer audience.  Such commercial value in his identity permits him to receive an economic return from the use of his name, photograph, image and/or likeness, and, as a result, he has a well-established value for and is highly paid for his select endorsement or sponsorship of products (including of apparel and other consumer products).

23.    The commercial value and marketability of Dunham's identity can be diminished by the improper and inappropriate use of his image, and/or by an unauthorized commercial use of his name, photograph, image and/or likeness.  As such, to limit the potential harmful consequences to his commercial value caused by improper and inappropriate use of his image and to ensure that the product, medium and mode of promotion are consistent and compatible with his persona, Dunham and his representatives are understandably careful in choosing which products he will endorse.

24.    Dunham became known to relevant consumers and the public at large in large part through his inherently distinctive characters, the use of which forms the bedrock of Dunham's performances and persona. These include, without, limitation, the following, which shall be referred to herein as the "Characters":

a.    **Walter ("Walter")**: Walter is a retired, crotchety old man, who has a brash and sarcastic view of the world. Walter has been part of Dunham's performance for over 30 years and has appeared in every one of Dunham's Comedy Central specials.



b.    **Achmed the Dead Terrorist ("Achmed")**:  Achmed is the skeletal corpse of an incompetent suicide bomber, who is known for his catch phrase, "Silence! I keel you!" Achmed first appeared in the 2007 *Spark of Insanity* special, and has appeared in every Dunham special since then.



c.    **Bubba J ("Bubba J")**: Bubba J is a beer-drinking hillbilly whom Dunham uses for humor centered on "redneck" sterotypes, and has appeared in Dunham specials since 2006.



8

d.    **Peanut ("Peanut")**: Peanut is a purple-skinned monster with white fur covering most of his body and a tuft of green hair on the top of his head, and has appeared in Dunham specials since 2003.



e.    **Jose Jalapeno on a Stick ("Jose")**: Jose is a talking jalapeno pepper on a stick who wears a small sombrero and speaks in a thick Spanish accent. Jose was the first character that Dunham made himself and has appeared in Dunham specials since 2003.

25.    Dunham has marketed, promoted, licensed, and sold products (including t-shirts) worldwide under his name and brand, featuring the Characters, for over a decade.

26.    Dunham has taken a number of steps to protect the Characters, including their names and overall appearances. Dunham and/or the Trust are the sole and exclusive owners of all relevant intellectual property rights in and to the Characters' names, images, and likenesses, specifically including the copyrights, trademarks, and trade dress forming the basis of this action.  As a result of their calculated handling of the Dunham brand (including the Characters), Dunham and the Trust have realized millions of dollars in sales of a wide range of goods and services incorporating the Dunham brand and the Characters, including, without limitation, t-shirts and other apparel.

27.    Dunham and/or the Trust are the sole and exclusive owners of the copyrights in and to the Characters and other Dunham-related intellectual property, which are

9

protected by the following U.S. Copyright Registration Numbers, among others (collectively, the "Dunham Copyrights"):

        a.      ACHMED: U.S. Copyright Reg. No. VA 1-723-423 (Reg. June 14, 2010);

        b.      BUBBA J: U.S. Copyright Reg. No. VA0001789343 (Reg. March 17, 2011);

        c.      JOSE JALAPENO ON A STEEK!: U.S. Copyright Reg. No. VAu 1-081-316 (Reg. June 14, 2010);

        d.      PEANUT: U.S. Copyright Reg. No. VAu 1-081-417 (Reg. March 17, 2011);

        e.      WALTER: U.S. Copyright Reg. No. VAu 001081315 (Reg. June 14, 2010).

Attached hereto as **Exhibit A** are true and correct copies of the above-referenced registrations. The Dunham Copyrights, including all rights to enforce the Dunham Copyrights, have been assigned to the Trust.

28.      Dunham and/or the Trust are the sole and exclusive owners of all federal and common law rights in and to the following trademarks (collectively, the "Dunham Trademarks"):

        a.      "ACHMED" as used and registered in, *inter alia*, International Class 028 (games and playthings) (protected by U. S. Trademark Reg. No. 3,685,560 issued by the United States Patent and Trademark Office (the "USPTO") on February 22, 2009), 025 (t-shirts and hooded sweatshirts) (protected by U. S. Trademark Reg. No. 3,889,166 issued by the USPTO on December 14, 2010), and 024 (blanket throws) (protected by U. S. Trademark Reg. No. 4,564,283 issued by the USPTO on July 8, 2014);

        b.      "I KEEL YOU!" as used and registered in, *inter alia*, International Class 025 (clothing, including t-shirts) (protected by U. S. Trademark Reg. No. 3,676,291 issued by the USPTO on September 1, 2009), 025 (clothing, including caps and hooded sweatshirts) (protected by U. S. Trademark Reg. No. 3,916,359 issued by the USPTO on

February 8, 2011), and 024 (blanket throws) (protected by U. S. Trademark Reg. No. 4,564,284 issued by the USPTO on July 8, 2014);

      c.   "JEFF DUNHAM" as used and registered in, *inter alia*, International Class 025 (clothing, including t-shirts) (protected by U. S. Trademark Reg. No. 3,889,473 issued by the USPTO on December 14, 2010), 09 (CDs and DVDs) (protected by U. S. Trademark Reg. No. 3,896,678 issued by the USPTO on December 28, 2010), 018 (reusable shopping bags) (protected by U. S. Trademark Reg. No. 4,564,159 issued by the USPTO on July 8, 2014), and 024 (blanket throws) (protected by U. S. Trademark Reg. No. 4,564,285 issued by the USPTO on July 8, 2014);

      d.   "BUBBA J" as used and registered in, *inter alia*, International Class 025 (t-shirts) (protected by U. S. Trademark Reg. No. 3,872,850 issued by the USPTO on November 9, 2010);

      e.   "JOSE JALAPENO ON A STEEK" as used and registered in, *inter alia*, International Class 028 (dolls) (protected by U. S. Trademark Reg. No. 4,484,865 issued by the USPTO on February 18, 2014);

      f.   "PEANUT" as used and registered in, *inter alia*, International Class 025 (clothing, including t-shirts and hooded sweatshirts) (protected by U. S. Trademark Reg. No. 3,882,782 issued by the USPTO on November 30, 2010) and 028 (dolls) (protected by U. S. Trademark Reg. No. 3,870,713 issued by the USPTO on November 2, 2010);

      g.   "WALTER" as used and registered in, *inter alia*, International Class 025 (clothing, including t-shirts) (protected by U. S. Trademark Reg. No. 3,870,490 issued by the USPTO on November 2, 2010) and 028 (dolls) (protected by U. S. Trademark Reg. No. 3,870,714 issued by the USPTO on November 2, 2010);

      Attached hereto as **Exhibit B** are true and correct copies of the above-referenced registrations. The Dunham Trademarks, including all rights to enforce the Dunham Trademarks, have been assigned to the Trust.

29.     The Dunham Trademarks are distinctive, have been continually used throughout the United States, as well as worldwide, and are well known to the trade and members of the purchasing public.

30.     The Characters' appearance also includes protectable trade dress. For example, (i) Walter's protectable trade dress includes his facial scowl, folded arms, bow tie, sweater vest, buttoned down, long-sleeved shirt, dress pants, and dress shoes; (ii) Achmed's protectable trade dress includes his skeletal body and head, bulging, bloodshot yellow eyes, and dirtied turban; (iii) Bubba J's protectable trade dress includes his bucktooth smile, worn t-shirt, exposed beer belly, blue jeans, cowboy boots, and baseball cap; (iv) Peanut's protectable trade dress includes his primate-like body with purple skin and tan fur, tuft of green hair, green eyes, one shoe, and oversized red lips; and (v) Jose Jalapeno on a Steek's protectable trade dress includes a jalapeno pepper on a stick, with a mustache, sombrero, and sad, droopy eyes (collectively, the "Dunham Trade Dress"). The Dunham Trade Dress is owned by Plaintiff, and is distinctive and non-functional.

31.     Dunham has continuously advertised, distributed, and sold merchandise that incorporates the Dunham Copyrights, Dunham Trademarks, and Dunham Trade Dress through a wide variety of distribution channels, including, but not limited to, through retail stores, Dunham's website, and at his live shows.

### B.     Defendants Knowingly Infringe Upon Plaintiff's Intellectual Property Rights by Creating, Manufacturing, and Distributing Large Quantities of Counterfeit Dunham Clothing and Printed Material.

32.     Defendants are in the business of operating online platforms, including, without limitation, the websites www.teechip.com and www.teechili.com (the "Infringing Websites"), which offer for sale a variety of consumer products, including apparel (including t-shirts and hooded sweatshirts) and other merchandise.

33.     Upon information and belief, once a visitor to one of the Infringing Websites places an order for a product, Defendants manufacture the product, ship it to the customer, process the payment, and retain profits from the sale.

12

34.     Upon information and belief, Defendants, with locations in California, Indiana, and Pennsylvania, own their own printing facilities and ship to over two hundred (200) countries.

35.     Defendants are advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from products incorporating works protected by the Dunham Copyrights, including Walter, Achmed, Peanut, Bubba J, and Jose (the "Copyright Infringing Products"). A few examples are depicted below. Many more are attached hereto as **Exhibits C** (providing examples of the infringing conduct on www.teechili.com) and **D** (providing examples of the infringing conduct on www.teechip.com).



COMPLAINT

36.    In addition, Defendants are advertising, marketing, creating, displaying, offering for sale, selling, distributing, and profiting from massive quantities of counterfeit Dunham products. Many of the counterfeit products incorporate exact replicas of the Dunham Trade Dress and Trademarks on products in the classes for which the marks are registered, including the names of the Characters and their catch phrases (the "Trademark and Trade Dress Infringing Products;" together with the Copyright Infringing Products, the "Infringing Products"). A few examples are depicted below, and many are attached hereto as **Exhibits C** and **D.**



COMPLAINT

37.     Further, Defendants have commercially exploited Dunham's name and likeness in connection with their advertisement, marketing, promotion, manufacture, and sale of Infringing Products (some of which also exploit Dunham's name and likeness on the Infringing Product itself), without his knowledge and consent.  See this image from www.teechili.com, which will take the consumer to Infringing Products for sale when they click on it:



38.     Consequently, Dunham's name, photograph, image and/or likeness have been used without his authorization to attract and captivate the attention of consumers in connection with the promotion of the Infringing Products.  Such use falsely implies and was obviously intended to cause potential consumers to mistakenly believe that Dunham has endorsed and is affiliated with Defendants, when, in fact, he has not and is not.

39.     Defendants' infringement is knowing and willful, as evidenced by (a) the sheer quantity of different counterfeit designs and Infringing Products being sold by Defendants, (b) the exact duplication of a variety of iconic Dunham designs, and (c) Defendants' pattern and practice of infringing upon the intellectual property rights of well-known brands. For example, Ooshirts has been sued multiple times for the same type of infringing conduct. *See*, *e.g.*, *Home Box Office, Inc. v. Ooshirts, Inc.*, Civ. Action No. 18-CV-4645 (S.D.N.Y 2018); *Atari Interactive, Inc. v. Ooshirts, Inc.*, Case No. 3:19-CV-00264-WHO (N.D. Cal. 2019); *Hoelck v. Ooshirts, Inc. et al*, 1:18-cv-00062-AT (S.D.N.Y. 2018).

40.     In fact, the Infringing Websites are configured so that a search for "Dunham" or other Dunham trade names will lead directly to the Infringing Products.

Further, the www.teechili.com website (which, upon information and belief, is run and managed by www.teechip.com), actually has an *entire section of its site* devoted to "Jeff Dunham" products, which is found under the header "Jeff Dunham."

41.     Defendants have profited from their unauthorized use of Dunham's intellectual property through the sale of the infringing goods, and Defendants' infringement has harmed Dunham by cheapening and diluting the Dunham brand, diverting profits from the sale of authentic Dunham goods, and causing Dunham and the Trust to lose profits and licensing fees from the authorized use of their intellectual property.

42.     As a direct consequence of Defendants' intentional and outrageous misconduct, Dunham's representatives have been informed by multiple fans and consumers that they believe Dunham is selling the Infringing Products and that he is wrongfully attempting to profit from the COVID-19 pandemic (he is not), which is causing material harm to his brand and reputation every single day.

## FIRST CLAIM FOR RELIEF

### (Copyright Infringement 17 U.S.C §§ 101, *et seq*.)

### (Against All Defendants)

43.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 of the Complaint as if set forth in full herein.

44.     As alleged, Plaintiff is the exclusive owner of the Dunham Copyrights, and has registered its copyright interests therein with the United States Copyright Office.

45.     By engaging in the conduct described herein, including by reproducing, and/or otherwise exploiting the Dunham Copyrights in connection with the infringing products and by advertising, distributing, and/or selling the infringing products to unwary consumers both in the State of California and throughout the United States, Defendants have infringed Plaintiff's exclusive rights under the Copyright Act in and to the Dunham Copyrights.

46.     Defendants infringed Plaintiff's copyrights willfully.

47.     At no time has Plaintiff authorized or consented to Defendants' infringing conduct described herein.

48.     Each reproduction, advertisement, distribution, dissemination, and/or other unauthorized exploitation of the Dunham Copyrights by Defendants constitutes a separate and distinct and continuing act of infringement.

49.     Aa direct and proximate result of Defendants' infringement of Plaintiff's copyrights and exclusive rights under the Copyright Act, Dunham has been damaged in an amount not yet fully ascertainable but which is believed to be in excess of Ten Million ($10,000,000) Dollars.  Plaintiff is entitled to damages as well as Defendants' profits pursuant to 17 U.S.C. § 504(b) for each infringement.

50.     Alternatively, Plaintiff is entitled to the maximum statutory damages, pursuant to 17 U.S.C. § 504(c), in the amount of One Hundred Fifty Thousand Dollars ($150,000) for each of the individual infringements forming the basis of this action, or for such other amount as may be proper pursuant to 17 U.S.C. § 504(c).

51.     Plaintiff is further entitled to its attorneys' fees and full costs pursuant to 17 U.S.C. § 505.

52.     Defendants' conduct threatens to cause, is causing, and unless enjoined and restrained by this Court will continue to cause Plaintiff great and irreparable injury that cannot fully be compensated for or measured in monetary damages alone.  Plaintiff has no adequate remedy at law.  Pursuant to 17 U.S.C. § 502, Plaintiff is entitled to preliminary and permanent injunction prohibiting further infringements of its exclusive copyrights.

## SECOND CLAIM FOR RELIEF

### (Trademark and Trade Dress Infringement and Counterfeiting 15 U.S.C. § 1114)

### (Against All Defendants)

53.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 of the Complaint as if set forth in full herein.

17

54.     Plaintiff is the owner of the Dunham Trademarks, which are registered for the categories of goods on which Defendants are using the trademarks, as well as the Dunham Trade Dress.

55.     The Dunham Trademarks are valid, protectable marks.

56.     The Dunham Trade Dress is distinctive and non-functional, has been used throughout the United States and worldwide, and is well known to the trade and members of the purchasing public.

57.     Through their above-described actions, Defendants have used and continue to use in commerce a reproduction or copy of the Dunham Trade Dress and the Dunham Trademarks and/or colorable imitations thereof that are confusingly similar to those marks in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause consumer confusion, or to cause mistake, or to deceive.

58.     The aforesaid conduct of Defendants is without the consent or permission of Plaintiff.

59.     Defendants infringed upon the Dunham Trade Dress and Dunham Trademarks and engaged in trademark counterfeiting willfully.

60.     As a proximate result of Defendants' infringement, Plaintiff has suffered and continues to suffer monetary damages in an amount not yet fully ascertainable but which is believed to be in excess of Ten Million ($10,000,000) Dollars, and Defendants have unlawfully profited, in an amount which cannot be accurately computed at this time but will be proven at trial.

61.     Defendants' acts were committed, and continue to be committed, with actual notice of Plaintiff's exclusive rights and with the intent to cause confusion, to cause mistake, and/or to deceive, and to cause injury to the reputation and goodwill associated with Plaintiff and his products. Pursuant to 15 U.S.C. section 1117, Plaintiff is therefore entitled to recover three times its actual damages or three times Defendants' profits, whichever is greater. Plaintiff is also entitled to statutory damages of $2 million per registered mark. In addition, pursuant to 15 U.S.C. section 1118, Plaintiff is entitled to an

18

order requiring destruction of all infringing products and promotional materials in Defendants' possession.

62.     Plaintiff is further entitled to injunctive relief because the conduct of Defendants has caused and will continue to cause Plaintiff irreparable harm for which there is no adequate remedy at law.

63.     This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Defendants' actions have been malicious, fraudulent, deliberate, willful, and taken in bad faith with full knowledge and in conscious disregard of Plaintiff's rights. As such, Plaintiff is entitled to recover its attorneys' fees pursuant to 15 U.S.C. § 1117(a).

### THIRD CLAIM FOR RELIEF

### (Trademark and Trade Dress Dilution 15 U.S.C. §1125(c))

### (Against All Defendants)

64.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 of the Complaint as if set forth in full herein.

65.     The Dunham Trademarks are each distinctive, famous, and widely recognized by the general consuming public of the United States, and were so prior to the date of Defendants' conduct alleged herein.

66.     The Dunham Trade Dress is distinctive and non-functional, has been used throughout the United States and worldwide, and is well known to the trade and members of the purchasing public.

67.     Defendants' unauthorized use of the Dunham Trade Dress and Dunham Trademarks is likely to dilute and is diluting the distinctive quality of the famous Dunham Trade Dress and Dunham Trademarks, in that Defendants' conduct is likely to create and has created an association between the Infringing Products and the Dunham Trade Dress and Dunham Trademarks, which impairs the distinctiveness of those famous marks and lessens the capacity of those famous marks to identify and distinguish products marketed and sold by Plaintiff and/or his authorized licensees under those marks.

19

68.     On information and belief, Defendants' acts of trade dress and trademark dilution have been done willfully and deliberately and Defendants have profited and been unjustly enriched by sales that Defendants would not otherwise have made but for their unlawful conduct.  As such, Plaintiff is entitled to the disgorgement of Defendants' profits under 15 U.S.C.§ 1117(a)

69.     Plaintiff is further entitled to recover treble damages pursuant to 15 U.S.C. § 1117(a).

70.     Plaintiff has no adequate remedy at law.  Plaintiff is entitled to injunctive relief because the conduct of Defendants described above has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Plaintiff in its trade dress, trademarks, and to the business, reputation, and goodwill of Plaintiff.

71.     As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer monetary damages in an amount not yet fully ascertainable but which is believed to be in excess of Ten Million ($10,000,000) Dollars, and Defendants have unlawfully profited, in an amount which cannot be accurately computed at this time but will be proven at trial.

72.     This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Defendants' actions have been malicious, fraudulent, deliberate, willful, and taken in bad faith with full knowledge and in conscious disregard of Plaintiff's rights. As such, Plaintiff is entitled to recover its attorneys' fees pursuant to 15 U.S.C. § 1117(a).

## FOURTH CLAIM FOR RELIEF

### (False Designation of Origin 15 U.S.C. §1125(a))

### (Against All Defendants)

73.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 of the Complaint as if set forth in full herein.

74.     The Dunham Trademarks have tremendous good will, are distinctive, have been used throughout the United States and worldwide, and are well known to the trade

COMPLAINT

and members of the purchasing public.  The public associates and identifies the Dunham Trademarks with Plaintiff.

75.   The Dunham Trade Dress is distinctive and non-functional, has been used throughout the United States and worldwide, and is well known to the trade and members of the purchasing public.

76.   Without Plaintiff's authorization or consent, Defendants have used the Dunham Trade Dress and Dunham Trademarks to advertise and sell, without limitation, the Infringing Products.

77.   Defendants' distribution, advertisement, sale, offer for sale, and/or other sale of the Infringing Products constitutes false designation of origin or sponsorship of said product and tends falsely to represent that the product originates from Plaintiff or has been sponsored, approved, or licensed by Plaintiff or is in some way affiliated or connected with Plaintiff.  Such conduct of Defendants is likely to confuse, mislead, and deceive Defendants' customers, purchasers, and members of the public as to the origin of the Infringing Products or cause said persons to believe that the Infringing Products and/or Defendants' infringing conduct have been sponsored, approved, authorized, or licensed by Plaintiff or are in some way affiliated or connected with Plaintiff, all in violation of 15 U.S.C. § 1125(a).

78.   Defendants' actions were done willfully with full knowledge of the falsity of such designations of origin and false descriptions or representations, and with the express intent to cause confusion, and to mislead and deceive the purchasing public.

79.   This case qualifies as an "exceptional case" within the meaning of 15 U.S.C. § 1117(a) in that Defendants' actions have been malicious, fraudulent, deliberate, willful, and taken in bad faith with full knowledge and in conscious disregard of Plaintiff's rights.  As such, Plaintiff is entitled to recover its attorneys' fees pursuant to 15 U.S.C. § 1117(a).

80.   Plaintiff is also entitled to the disgorgement of Defendants' profits pursuant to 15 U.S.C. § 1117(a).

81.     Plaintiff is further entitled to recover treble damages pursuant to 15 U.S.C. § 1117(a).

82.     Plaintiff has no adequate remedy at law.  Plaintiff is entitled to injunctive relief because the conduct of Defendants described above, has caused and, if not enjoined, will continue to cause irreparable damage to the rights of Plaintiff in its trademarks, and to the business, reputation, and goodwill of Plaintiff.

83.     As a proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer monetary damages in an amount not yet fully ascertainable but which is believed to be in excess of Ten Million ($10,000,000) Dollars, and Defendants have unlawfully profited, in an amount which cannot be accurately computed at this time but will be proven at trial.

## FIFTH CLAIM FOR RELIEF
### (Common Law Unfair Competition)
**(Against All Defendants)**

84.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 of the Complaint as if set forth in full herein.

85.     Defendants have committed acts of unfair competition, proscribed by California Business and Professions Code § 17200 *et seq*., including the practices and conduct referred to above. These actions constitute unlawful, unfair, and/or fraudulent business acts or practices.

86.     Plaintiff has been, and will continue to be, damaged and irreparably harmed by Defendants' actions unless they are enjoined by this Court.

87.     By reason of such wrongful acts, Plaintiff is and was, and will be in the future, deprived of, among others, the profits and benefits of business relationships, agreements, and transactions with various existing fans and/or prospective fans and customers. Defendants have wrongfully obtained said profits and benefits. Plaintiff is entitled to compensatory damages and disgorgement of Defendants' said profits, in an amount to be proven at trial.

88.    Plaintiff is informed and believes, and thereon alleges, that Defendants committed the foregoing acts with the intention of depriving Plaintiff of his legal rights, with oppression, fraud, and/or malice, and in conscious disregard of Plaintiff's rights. Plaintiff is therefore entitled to an award of exemplary and punitive damages.

## SIXTH CLAIM FOR RELIEF

### (Contributory Copyright Infringement)

### (Against All Defendants)

89.    Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 of the Complaint as if set forth in full herein.

90.    Defendants have been, and continue to be aware of and contributing to, the infringement of the Dunham Copyrights on Defendants' websites. The Infringing Products are prominently displayed and promoted on Defendants' websites. The Infringing Websites are configured so that a search for "Dunham" or other Dunham trade names will lead directly to the Infringing Products. Defendants create and distribute the Infringing Products to the end consumers and facilitate the financial transactions. Further, Plaintiff has sent DMCA notices to Defendants (including to one or more of the Infringing Websites) on multiple occasions over the past two years, and while infringing products have been taken down, the same and new infringing products have been put back up on the Infringing Websites, in what amounts to a never-ending game of "whack-a-mole."

91.    Alternatively, Defendants have been (and continue to be) willfully blind to the infringement of the Dunham Copyrights on the Infringing Websites and on the products that Defendants create and distribute to the end consumer.

92.    As a proximate result of Defendants' contributory infringement, Plaintiff has suffered and continues to suffer monetary damages in an amount not yet fully ascertainable but which is believed to be in excess of Ten Million ($10,000,000) Dollars, and Defendants have unlawfully profited, in an amount which cannot be accurately computed at this time but will be proven at trial.

23

93.     Plaintiff is entitled to all of the remedies set forth above for direct copyright infringement.

**SEVENTH CLAIM FOR RELIEF**

**(Contributory Trademark and Trade Dress Infringement and Counterfeiting)**
**(Against All Defendants)**

94.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 of the Complaint as if set forth in full herein.

95.     Defendants have been, and continue to be aware of and contributing to, the infringement of the Dunham Trademarks and Dunham Trade Dress on Defendants' websites. The counterfeit and Infringing Products are prominently displayed and promoted on Defendants' websites. The Infringing Websites are configured so that a search for "Dunham" or other Dunham trade names will lead directly to the counterfeit and Infringing Products. Defendants create and distribute the counterfeit and Infringing Products to the end consumers and facilitate the financial transactions. Further, Plaintiff has sent DMCA notices to Defendants (including to one or more of the Infringing Websites) on multiple occasions over the past two years, and while infringing products have been taken down, the same and new infringing products have been put back up on the Infringing Websites, in what amounts to a never-ending game of "whack-a-mole."

96.     Alternatively, Defendants have been (and continue to be) willfully blind to the infringement and/or counterfeiting of the Dunham Trademarks and Dunham Trade Dress on the Infringing Websites and on the products that Defendants create and distribute to the end consumer.

97.     As a proximate result of Defendants' contributory infringement and counterfeiting, Plaintiff has suffered and continues to suffer monetary damages in an amount not yet fully ascertainable but which is believed to be in excess of Ten Million ($10,000,000) Dollars, and Defendants have unlawfully profited, in an amount which cannot be accurately computed at this time but will be proven at trial.

98.     Plaintiff is entitled to all of the remedies set forth above for direct trademark and trade dress infringement and counterfeiting.

## EIGHTH CLAIM FOR RELIEF
### (Vicarious Copyright Infringement)
**(Against All Defendants)**

99.     Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 of the Complaint as if set forth in full herein.

100.    Defendants directly benefit financially from the infringing activity of third parties who design and upload infringing designs to the Infringing Websites. Upon information and belief, Defendants get paid a percentage of every sale of every product displayed on the Infringing Websites. The availability of the Infringing Products also draws customers to the Infringing Websites, which causes Defendants to make money both through the sale of the Infringing Products and through the sale of all goods displayed on the Infringing Websites.

101.    Defendants have the legal right to stop or limit the copyright infringement on the Infringing Websites and the practical ability to do so. Defendants have the ability and means to monitor the Infringing Websites and the right to remove the Infringing Products. Further, Plaintiff has sent DMCA notices to Defendants (including to one or more of the Infringing Websites) on multiple occasions over the past two years, and while infringing products have been taken down, the same and new infringing products have been put back up on the Infringing Websites, in what amounts to a never-ending game of "whack-a-mole."

102.    As a proximate result of Defendants' vicarious infringement, Plaintiff has suffered and continues to suffer monetary damages in an amount not yet fully ascertainable but which is believed to be in excess of Ten Million ($10,000,000) Dollars, and Defendants have unlawfully profited, in an amount which cannot be accurately computed at this time but will be proven at trial.

COMPLAINT

103.   To remedy Defendants' vicarious copyright infringement, Plaintiff is entitled to all of the remedies set forth above for direct copyright infringement.

## NINTH CLAIM FOR RELIEF

### (Vicarious Trademark and Trade Dress Infringement)

### (Against All Defendants)

104.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 of the Complaint as if set forth in full herein.

105.   Defendants, and each of them, and the third parties who are in an actual and/or apparent partnership, have the authority to bind one another in transactions with third parties, and/or exercise joint control or ownership over the Infringing Products. Defendants are thus vicariously liable for the trademark and trade dress infringement of the third parties who design and upload infringing and counterfeit designs onto the Infringing Websites. Further, Plaintiff has sent DMCA notices to Defendants (including to one or more of the Infringing Websites) on multiple occasions over the past two years, and while infringing products have been taken down, the same and new infringing products have been put back up on the Infringing Websites, in what amounts to a never-ending game of "whack-a-mole."

106.   As a proximate result of Defendants' vicarious infringement and counterfeiting, Plaintiff has suffered and continues to suffer monetary damages in an amount not yet fully ascertainable but which is believed to be in excess of Ten Million ($10,000,000) Dollars, and Defendants have unlawfully profited, in an amount which cannot be accurately computed at this time but will be proven at trial.

107.   To remedy Defendants' vicarious trademark and trade dress infringement and counterfeiting, Plaintiff is entitled to all of the remedies set forth above for direct trademark infringement and counterfeiting.

## TENTH CLAIM FOR RELIEF

### (Violation of California Civil Code § 3344)

### (Against All Defendants)

108.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 of the Complaint as if set forth in full herein.

109.   At all times relevant hereto, Plaintiff had, and still has, the sole and exclusive right to authorize and license the use of his name, image, photograph, and likeness.  Plaintiff never consented to the use of his name, image, photograph, or likeness for any purpose or in any manner by any of the Defendants, and specifically never consented to the use of his name, image, photograph, or likeness to endorse, promote, advertise, sponsor or recommend in any manner the products of Defendants.

110.   Plaintiff is informed and believes and based thereon alleges that Defendants, and each of them, intentionally, negligently and/or knowingly and fraudulently caused Plaintiff's name, image, photograph, and likeness to be utilized in connection with the promotion or advertising of the Defendants' products.

111.   Plaintiff is informed and believes and based thereon alleges that the manner in which the Defendants' advertisements were depicted to the public was grossly misleading and deceptive in that it appears that Plaintiff agreed to permit the use of his name, photograph, image and likeness in the manner herein alleged or promotes and/or endorses the products and/or the Defendants in the manner described when, in fact, he does not consent to any of the foregoing.

112.   Plaintiff has developed and cultivated his image and persona to create his celebrity and universal recognition and Defendants, and each of them, have, without any right, title or authorization, misappropriated Plaintiff's valuable publicity rights and the resulting success and popularity of Plaintiff by illegally using his name, photograph, image and likeness for the aforesaid commercial purpose.

113.   The conduct of Defendants, and each of them, as alleged hereinabove, constitutes a violation of California Civil Code §3344 due to the knowing and

27

unauthorized use by Defendants, and each of them, of Plaintiff's name, photograph, image and likeness for commercial purposes. Plaintiff's name, photograph, image and likeness have substantial commercial value and Plaintiff has received substantial monies and recognition therefrom.

114. As a direct and proximate result of the aforesaid wrongful acts of Defendants, and each of them, Plaintiff has been damaged in an amount that is not yet fully ascertainable, but which is believed to be in excess of Ten Million Dollars ($10,000,000). When Plaintiff has ascertained the full amount of damages, he will seek leave of Court to amend this Complaint accordingly.

115. As a direct and proximate result of the aforesaid wrongful acts of Defendants, and each of them, Plaintiff has incurred and will continue to incur substantial attorney fees and costs. Plaintiff is entitled to an award of his attorney fees and costs incurred in connection with this litigation pursuant to Section 3344 of the California Civil Code.

116. By reason of the aforesaid wrongful acts of Defendants, and each of them, in addition to the relief sought hereinabove, Plaintiff is entitled to an accounting of all gross revenues and profits received, directly and indirectly, by Defendants, and each of them, as a result of the unauthorized use of his photograph, image and likeness and to an award of all such sums. By reason of Defendants', and each of their, wrongful acts as alleged hereinabove, Defendants, and each of them, are involuntary trustees holding all such sums in their possession under a constructive trust for the benefit of Plaintiff with a duty to transfer the same to Plaintiff forthwith.

117. Plaintiff is informed and believes and based thereon alleges that Defendants, and each of them, in doing the things herein alleged, acted willfully, maliciously, oppressively, and despicably, with fully knowledge of the adverse effect of their actions on Plaintiff and with willful and deliberate disregard of the consequences to Plaintiff. By reason thereof, Plaintiff is entitled to recover punitive and exemplary damages from Defendants in an amount to be determined at the time of trial.

COMPLAINT

## ELEVENTH CLAIM FOR RELIEF

### (For Common Law Misappropriation of The Right of Publicity)

### (Against All Defendants)

118.   Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 42 of the Complaint as if set forth in full herein.

119.   As alleged, Defendants have usurped, tarnished and exploited Dunham's celebrity for their own wrongful purposes.  Defendants have, without any right, title or authorization, misappropriated Dunham's valuable publicity rights for the aforesaid commercial purposes, by illegally exploiting and purporting to sell the right to exploit Dunham's name, photograph, image, and likeness, with the knowledge that Dunham did not authorize, approve of, or consent to such exploitation.

120.   Defendants' conduct constitutes a violation and commercial misappropriation of Dunham's common law right of publicity, in that Defendants misappropriated Dunham's name, photograph, image, and likeness for the purpose of commercial gain, without Dunham's knowledge or consent, knowing that Dunham would strongly object.

121.   Dunham is informed and believes and based thereon alleges that Defendants' alleged misappropriation was for their financial advantage in that (1) Defendants received substantial sums of money for the sale of Infringing Products that exploited Dunham's name, photograph, image and likeness, (2) Defendants received substantial sums of money for the sale of Infringing Products that Defendants sold due to their use of Dunham's name, photograph, image, and likeness in connection with the promotion, marketing, and/or advertising of the Infringing Products, and (3) Defendants' unauthorized use of Dunham's name, photograph, image, and likeness were intended to increase sales of all products on the Infringing Websites.

122.   As a direct and proximate result of the aforementioned acts by Defendants, Dunham has been damaged in an amount not yet fully ascertainable but which is believed to be in excess of Ten Million ($10,000,000) Dollars, including damage to the value of

29

Dunham's name, photograph, image, likeness and goodwill, and the loss of the monetary consideration that would customarily be paid by Defendants to Dunham to license his name, photograph, image, and likeness in connection with his endorsement or sponsorship.

123.   As a direct and proximate result of the aforementioned acts by Defendants, they have earned profits attributable to the unauthorized and wrongful exploitation of Dunham's name, photograph, image, and likeness and/or purported affiliation or endorsement, and have thereby been unjustly enriched.  The amount of said ill-gotten gains and profits has yet to be ascertained.  Dunham is entitled to disgorge and recover all said unjust enrichments, including all revenues and profits earned by Defendants as a result of their unauthorized commercial exploitation of Dunham's name, photograph, image and/or likeness in violation of his right of publicity.

124.   Based on the foregoing, the Court should require Defendants to render an accounting to Dunham and the Court should impose a constructive trust on all said revenues obtained directly or indirectly by Defendants resulting from the unauthorized commercial exploitation of Dunham's name, photograph, image and/or likeness in violation of his right of publicity.  Defendants are constructive trustees holding said funds in trust for Dunham.

125.   Dunham is informed and believes and based thereon alleges that the aforementioned acts of Defendants were done intentionally or with a conscious and reckless disregard of Dunham's rights, and with the intent to vex, injure or annoy him, such as to constitute oppression, fraud, or malice, thus entitling Dunham to exemplary and punitive damages in an amount appropriate to punish or set an example of Defendants and to deter such conduct in the future, the exact amount of such damages subject to proof at the time of trial.

126.   Defendants' conduct threatens to cause, is causing, and unless enjoined and restrained by this Court will continue to cause Dunham great and irreparable injury that cannot fully be compensated for or measured in monetary damages alone.  By reason of

30

the foregoing, Dunham is entitled to temporary, preliminary and permanent injunctive relief, enjoining Defendants' unauthorized exploitation of his name, photograph, image and/or likeness in violation of his right of publicity.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants, and each of them, as follows:

1.     For preliminary and permanent injunctions enjoining and restraining Defendants, their agents, employees, representatives, partners, joint venturers, and anyone acting on behalf of, or in concert with Defendants, from:

a.     designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting any product that incorporates designs substantially similar to Plaintiff's copyrighted works;

b.     designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting any product that incorporates or is marketed in conjunction with any Dunham Trademark or Dunham Trade Dress;

c.     designing, manufacturing, importing, shipping, delivering, selling, marketing, displaying, advertising, or promoting any product that incorporates or is marketed in conjunction with Plaintiff's name, voice, image, and/or likeness.

d.     representing or implying, directly or indirectly, to retailers, customers, distributors, licensees, or any other customers or potential customers of Defendants' products that Defendants' products originate with or are sponsored, endorsed, or licensed by, or are otherwise associated or affiliated with, Plaintiff.

2.     For an order requiring the destruction of all of Defendants' infringing products and all marketing, advertising, or promotional materials depicting Defendants' infringing products;

3.     For an accounting of all profits obtained by Defendants from sales of the infringing products and an order that Defendants hold all such profits in a construct trust for the benefit of Plaintiff.

4.     For an award to Plaintiff of all profits earned by Defendants from their infringing acts;

5.     For compensatory damages according to proof;

6.     For statutory damages of no less than $150,000 per registered copyright and no less than $2 Million per registered trademark;

7.     For general and special damages for Defendants' violation of Dunham's common law and statutory publicity rights, in an amount not yet fully ascertainable but which is believed to be in excess of Ten Million ($10,000,000) Dollars;

8.     For pre-judgment and post-judgment interest on all damages awarded by this Court;

9.     For reasonable attorney's fees and costs of suit incurred herein; and

10.    For such other and further relief as the Court deems just and proper.


Dated:  April 23, 2020

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
T. WAYNE HARMAN
JAKE A. CAMARA


By:   /s/ Martin D. Singer
MARTIN D. SINGER
Attorneys for Plaintiff
JEFF DUNHAM

32

## **<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff, individually and as Trustee of The Jeff Dunham Trust Dated March 24, 2010, respectfully requests a jury trial on all issues triable set forth in this Complaint.

Dated:  April 23, 2020

LAVELY & SINGER
PROFESSIONAL CORPORATION
MARTIN D. SINGER
T. WAYNE HARMAN
JAKE A. CAMARA


By:   <u>/s/ Martin D. Singer</u>
MARTIN D. SINGER
Attorneys for Plaintiff
JEFF DUNHAM

33

COMPLAINT