1   Craig J. Mariam (SBN: 225280)
    cmariam@grsm.com
2   Garrett M. Fahy (SBN: 267103)
    gfahy@grsm.com
3   Stephanie L. Cobau (SBN: 307713)
    scobau@grsm.com
4   GORDON REES SCULLY MANSUKHANI, LLP
    633 West Fifth Street, 52nd floor
5   Los Angeles, CA 90071
    Telephone: (619) 696-6700
6   Facsimile: (619) 696-7124

7   Attorneys for defendants,
    Raymond Lei and ooShirts, Inc.
8

9               UNITED STATES DISTRICT COURT

10              CENTRAL DISTRICT OF CALIFORNIA

11  JEFF DUNHAM, as an individual and in )  CASE NO. 2:20-CV-03716
    his capacity as TRUSTEE OF THE JEFF )
12  DUNHAM TRUST DATED MARCH )           **DEFENDANTS RAYMOND LEI**
    24, 2010,                          ) **AND OOSHIRTS, INC.'S**
13                                     ) **MOTION TO DISMISS;**
                         Plaintiff,    ) **MEMORANDUM OF POINTS**
14                                     ) **AND AUTHORITIES IN**
         v.                            ) **SUPPORT THEREOF**
15                                     )
    RAYMOND LEI, an individual;        ) Complaint filed: April 23, 2020
16  OOSHIRTS, INC., d/b/a TeeChip and  ) Judge: Hon. Dolly M. Gee
    TeeChili; and DOES 1-50,           ) Magistrate Judge: Hon. Maria Audero
17                                     )
                         Defendants.   )
18                                     ) Hearing Date: September 4, 2020
                                       ) Hearing Time: 9:30 a.m.
19                                     ) Courtroom: 8C

20  ///

21  ///

22  ///

23  ///

24  ///

25  ///

26  ///

27  ///

28  ///

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

**TO THIS HONORABLE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that, on September 4, 2020 at 9:30 a.m., or as soon thereafter as the matter may be heard, before the Honorable Dolly M. Gee, presiding in Courtroom 8C of the United States District Court for the Central District of California, located at 350 West 1st Street, Los Angeles, California, 90012, defendants Raymond Lei and ooShirts, Inc. (collectively, the "Defendants") will and hereby do respectfully move this Honorable Court for an order dismissing plaintiff Jeff Dunham's Complaint with prejudice, pursuant to Federal Rule of Civil Procedure 12(b)(6).

Pursuant to Local Rule 7-3, this Motion is made following the conference of counsel, which took place on June 15, 2020.

This Motion will be and hereby is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities in support thereof, all other papers submitted and filed with this Notice, the pleadings and papers on file in this action, all matters judicially noticeable, and on such further documentary evidence and oral argument as this Court may allow at the hearing.


Dated: July 6, 2020          Respectfully submitted,

GORDON & REES SCULLY MANSUKHANI, LLP


By: /s/Craig J. Mariam
     Craig J. Mariam
     Garrett M. Fahy
     Stephanie L. Cobau
     Attorneys for defendants,
     Raymond Lei and ooShirts, Inc.

- 1 -

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

1
2

# MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

3    I.    INTRODUCTION ................................................................8

4    II.   FACTUAL BACKGROUND ...............................................9

5
6          A.    ooShirts Operates an Online Marketplace that Allows Third Party Sellers to Design and Upload Content, and Sell Customized Products ..............................................9

7
8          B.    Ignoring the Role of the Third Party Users, Mr. Dunham Contends that "Defendants" Marketed and Sold Allegedly Infringing Products ..........................................10

9    III.  LEGAL STANDARD ......................................................12

10   IV.   LEGAL ARGUMENT .....................................................12

11
12         C.    The Complaint Violates Federal Rule of Civil Procedure 8, As It Fails to Attribute Any *Specific* Conduct to a *Specific* Defendant ...................................................12

13
14         D.    Mr. Lei, an Alleged Corporate Officer, Must Be Dismissed, As Mr. Dunham Pleads No Facts in Support of Alter Ego Liability .......15

15         E.    Claim No. 1: The Direct Copyright Infringement Claim Fails, As ooShirts was Not the Most Significant Cause of the Alleged Copying ...................................................15

16
17         F.    Claim Nos. 2 & 4: The Direct Trademark Infringement Claims Fail, As Mr. Dunham Does Not Allege Confusion as to Origin ........17

18         G.    Claim Nos. 6-9: The Secondary Infringement Claims Fail ...............19

19
20               1.    All Secondary Infringement Claims Fail Because Such Claims Require Underlying Direct Infringement by a *Third Party* ...........................................19

21
22               2.    Contributory Copyright Infringement Claim Requires Actual or Constructive Knowledge of the Direct Infringement ...........................................20

23
24               3.    The Claim for Vicarious Copyright Infringement Fails Because Mr. Dunham Does Not Plead a "Right and Ability to Control" .......................................21

25
26               4.    The Contributory Trademark Infringement Claim Fails, As Mr. Dunham Does Not Plead Knowledge of the Infringement ...........................................23

27
28               5.    The Vicarious Trademark Infringement Claim Fails, As Mr. Dunham Does Not Allege an Apparent or Actual Partnership ...........................................24

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

H.   Claim No. 3: The Claim for Dilution Fails as Mr. Dunham Offers Nothing More Than a Mere Formulaic Recitation of the Elements ........................................................................26

I.   Claim No. 5: The Unfair Competition Claim Fails ...........................27

    1.   The Unfair Competition Claim Violates Rule 8, As it is Labeled a "Common Law" Claim, But Alleged as a Statutory Claim ...........................................................27

    2.   The Unfair Competition Claim is Preempted by the Copyright Act ............................................................28

J.   Claim Nos. 10-11: The Publicity Rights Claims Are Preempted, As Mr. Dunham's Persona Implicates His Copyrighted "Characters" ............................................................28

K.   Claim Nos. 5, 10-11: Each State Law Claim is Barred By 47 U.S.C. § 230 ............................................................30

L.   Portions of Mr. Dunham's Prayer for Relief Should Be Struck ........31

    1.   The Lanham Act Precludes Recovery of Monetary Damages, As ooShirts is an "Innocent Printer" ......................31

    2.   Counterfeiting Damages Are Not Available Unless the Infringer Sold, Offered for Sale, or Distributed the Counterfeit Goods ............................................................32

V.   CONCLUSION ............................................................32

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Gordon Rees Scully Mansukhani, LLP**
**633 West Fifth Street, 52nd floor**
**Los Angeles, CA 90071**

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*A&M Records. Inc. v. Napster. Inc.*,
   239 F.3d 1004 (9th Cir. 2001) ........................................................................20

*Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*,
   No. CV 10-03738 AB (CWx), 2015 U.S. Dist. LEXIS 120871 (C.D. Cal.
   Sep. 10, 2015) ............................................................................... 18, 19

*Adobe Sys. v. Blue Source Grp. Inc.*,
   125 F. Supp. 3d 945 (N.D. Cal. 2015)..............................................................8

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009)..............................................................12, 15, 21

*Asia Econ. Inst. v. Xcentric Ventures LLC*,
   No. CV 10-01360 SVW (PJWx), 2011 U.S. Dist. LEXIS 145380 (C.D.
   Cal. May 4, 2011) ...............................................................................30, 31

*Balsam v. Trancos, Inc.*,
   203 Cal. App. 4th 1083 (2012) .....................................................................15

*Bell Atlantic Corp. v. Twombly*,
   550 U.S. 544, 570 (2007)...........................................................................12

*Better Homes Realty, Inc. v. Watmore*,
   No. 3:16-cv-01607-BEN-MDD, 2017 U.S. Dist. LEXIS 59982 (S.D. Cal.
   Apr. 18, 2017)................................................................................13, 14

*Blue Nile, Inc. v. Ice.com, Inc.*,
   478 F. Supp. 2d 1240 (W.D. Wash. 2007) .......................................................28

*Boyer v. Becerra*,
   No. 17-cv-06063-YGR, 2018 U.S. Dist. LEXIS 72470 (N.D. Cal. Apr. 30,
   2018) ...............................................................................................12

*City of Carlsbad v. Shah*,
   850 F. Supp. 2d 1087 (S.D. Cal. 2012) ...........................................................27

*Coach, Inc. v. Goodfellow*,
   717 F.3d 498 (6th Cir. 2013) ......................................................................25

*CoStar v. Loopnet*,
   373 F.3d 544 (4th Cir. 2004) ...............................................................16, 17

*Crisp v. Kernan*,
   No. 2:17-cv-2431 KJN P, 2018 U.S. Dist. LEXIS 96221 (E.D. Cal. June 7,
   2018) ...............................................................................................13

*Del Madera Props. v. Rhodes & Gardner, Inc.*,
   820 F.2d 973 (9th Cir. 1987) ......................................................................28

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

*Evans v. Hewlett-Packard Co.*,
  No. C 13-02477 WHA, 2013 U.S. Dist. LEXIS 115856 (N.D. Cal. Aug. 15, 2013) ................................................................................30

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
  499 U.S. 340 (1991) ................................................................................20

*Fleet v. CBS, Inc.*,
  50 Cal. App. 4th 1911 (1996) ................................................9, 28, 29

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
  76 F.3d 259 (9th Cir. 1996) ................................................23, 24

*Fonovisa, Inc. v. Napster, Inc.*,
  No. C 01-02669 MHP, 2002 U.S. Dist. LEXIS 4270 (N.D. Cal. Jan. 28, 2002) ................................................................................14, 19

*Fox Broad. Co., Inc. v. Dish Network L.L.C.*,
  747 F.3d 1060 (9th Cir. 2014) ................................................8, 16, 17

*Fractional Villas, Inc. v. Tahoe Clubhouse*,
  No. 08cv1396-IEG-POR, 2009 U.S. Dist. LEXIS 4191 (S.D. Cal. Jan. 22, 2009) ................................................................................9, 28

*Gauvin v. Trombatore*,
  682 F. Supp. 1067 (N.D. Cal. 1988) ................................................12

*Gentry v. eBay, Inc.*,
  99 Cal. App. 4th 816, 836 (2002) ................................................30

*Gonzales v. City of Clovis*,
  No. 1:12-cv-00053-AWI-SKO, 2013 U.S. Dist. LEXIS 12719 (E.D. Cal. Jan. 29, 2013) ................................................................................13

*Grubbs v. Sheakley Grp., Inc.*,
  807 F.3d 785 (6th Cir. 2015) ................................................25

*Gucci Am., Inc. v. Frontline Processing Corp.*,
  721 F. Supp. 2d 228 (S.D.N.Y. 2010) ................................................25

*Gucci Am., Inc. v. Hall & Assocs.*,
  135 F. Supp. 2d 409 (S.D.N.Y. 2001) ................................................31

*Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc.*,
  955 F.2d 1143 (7th Cir. 1992) ................................................23, 24

*In re Aimster Copyright Litig.*, 334 F.3d 643 (7th Cir. 2003) ................................................21

*In re iPhone Application Litig.*,
  No. 11-MD-02250-LHK, 2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sep. 20, 2011) ................................................................................13, 14, 15

*Joude v. WordPress Found.*,
  No. C 14-01656 LB, 2014 U.S. Dist. LEXIS 91345 (N.D. Cal. July 3, 2014) ................................................................................30

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

*Klein Elecs., Inc. v. Boxwave Corp.*,
  No. 10cv2197 WQH (POR), 2011 U.S. Dist. LEXIS 69525 (S.D. Cal.
  June 27, 2011)..................................................................................26, 27

*Laws v. Sony Music Entertainment, Inc.*,
  448 F.3d 1134 (9th Cir. 2006) ...............................................................29

*Leek v. Cooper*,
  194 Cal. App. 4th 399 (2011) ................................................................15

*Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*,
  658 F.3d 936 (9th Cir. 2011) .......................................8, 19, 23, 25, 26

*Luvdarts, Ltd. Liab. Co. v. AT&T Mobility, Ltd. Liab. Co.*,
  710 F.3d 1068 (9th Cir. 2013) ...............................................................20

*Maloney v. T3Media, Inc.*,
  853 F.3d 1004 (9th Cir. 2017) ...............................................................29

*MDY Indus., LLC v. Blizzard Entm't, Inc.*,
  Nos. 09-15932, 09-16044, 2011 U.S. App. LEXIS 3428 (9th Cir. Feb. 17,
  2011) ......................................................................................................19

*Milo & Gabby, LLC v. Amazon.com, Inc.*,
  No. C13-1932RSM, 2015 U.S. Dist. LEXIS 92890 (W.D. Wash. July 16,
  2015) ................................................................................................22, 23

*Misik v. D'Arco*,
  197 Cal. App. 4th 1065 (2011) ..............................................................15

*Moroccanoil, Inc. v. Perfumes World Com, Inc.*,
  234 F. Supp. 3d 1026 (C.D. Cal. 2017) .................................................20

*Motown Record Corp. v. George A. Hormel & Co.*,
  657 F. Supp. 1236 (C.D. Cal. 1987) ......................................................29

*New York Times v. Sullivan*,
  376 U.S. 254 (1964)................................................................................31

*Owen v. City of Hemet*,
  No. ED CV 19-1388-ODW(E), 2020 U.S. Dist. LEXIS 99463 (C.D. Cal.
  Feb. 10, 2020) ........................................................................................27

*Panavision Int'l, L.P. v. Toeppen*,
  141 F.3d 1316 (9th Cir. 1998) ...............................................................26

*Parts.com, LLC v. Yahoo! Inc.*,
  996 F. Supp. 2d 933 (S.D. Cal. 2013) ...................................................30

*Perfect 10, Inc. v. CCBill LLC*,
  488 F.3d 1102 (9th Cir. 2007) ...............................................................30

*Perfect 10, Inc. v. Giganews, Inc.*,
  847 F.3d 657 (9th Cir. 2017) ...........................................9, 16, 21, 22

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

- 6 -

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n,*
     494 F.3d 788 (9th Cir. 2007) ...................................................................8, 23, 25

*Rosen v. eBay, Inc.,*
     No. CV 13-6801 MWF (Ex), 2015 U.S. Dist. LEXIS 49999 (C.D. Cal.
     Jan. 16, 2015)........................................................................................................22

*Rosenshine v. A. Meshi Cosmetics Indus.,*
     No. 18-cv-3572 (LDH), 2020 U.S. Dist. LEXIS 61315 (E.D.N.Y. Mar. 30,
     2020) .........................................................................................................................25

*Sybersound Records, Inc. v. UAV Corp.,*
     517 F.3d 1137 (9th Cir. 2008) ...........................................................................27

*Tiffany (NJ) Inc. v. eBay, Inc.,*
     600 F.3d 93 (2d Cir. 2010) ....................................................17, 18, 19, 23, 24

*UMG Recordings, Inc. v. Bertelsmann AG,*
     222 F.R.D. 408 (N.D. Cal. 2004) ......................................................................20

*UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co.,*
     718 F.3d 1006 (9th Cir. 2013) .................................................................20, 22, 23

*Ventura Content, Ltd. v. Motherless, Inc.,*
     No. 2:11-cv-5912-SVW-FMO, 2013 U.S. Dist. LEXIS 189948 (C.D. Cal.
     July 3, 2013) ...........................................................................................................22

*Viacom Int'l, Inc. v. YouTube, Inc.,*
     676 F.3d 19 (2d Cir. 2012) .................................................................................21

*Wham-O, Inc. v. Paramount Pictures Corp.,*
     286 F. Supp. 2d 1254 (N.D. Cal. 2003)...........................................................26

**Statutes**

15 United States Code
     Section 1114 ..........................................................................................................31

15 United States Code
     Section 1117 ..........................................................................................................32

47 United States Code
     Section 230 .....................................................................................................30, 31

Business and Professions Code
     Section 17200 ................................................................................................27, 28

**Rules**

Federal Rules of Civil Procedure
     Rule 12......................................................................................................9, 12, 32

Federal Rules of Civil Procedure
     Rule 8..............................................................................................8, 12, 15, 27

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

## I.    INTRODUCTION

Through his Complaint, Jeff Dunham asserts that fifty-two entity and individual "Defendants" exploited his intellectual property rights in connection with their sale of certain consumer goods. However, Mr. Dunham fails to allege each defendant's specific role in the alleged harm. Instead, Mr. Dunham improperly lumps the "Defendants" together and makes generalized allegations against them as a whole. As a result of Mr. Dunham's broad allegations, the Complaint does not provide defendants ooShirts, Inc. ("ooShirts") and Raymond Lei with fair notice of the grounds upon which the claims rest, as required by Federal Rule of Civil Procedure 8 ("Rule 8"), and, as such, must be dismissed. *See Adobe Sys. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) ("[P]laintiff must identify what action each Defendant took . . . without resort to generalized allegations against Defendants as a whole.").

Not only does Mr. Dunham's Complaint violate the pleading requirements of Rule 8, but many of the claims also fail as a matter of law. In particular, a direct copyright infringement claim requires that the defendant's conduct be the "most significant and important cause of the copy." *Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014). However, Mr. Dunham admits in the Complaint that it was "third parties," not ooShirts, who "design[ed] and upload[ed]" the allegedly infringing content. (Compl., ¶ 100.) Further, secondary infringement cannot be predicated on a service provider's receipt of, and compliance with, unrelated Digital Millennium Copyright Act ("DMCA") notices. Such notices do not establish the "actual or constructive knowledge" necessary to sustain a claim for contributory infringement. *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 943 (9th Cir. 2011). Nor does such an allegation demonstrate a right to control, or formation of a partnership with, the direct infringer, as is required for a vicarious infringement claim. *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (elements of vicarious

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

1    trademark infringement); *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 673 (9th

2    Cir. 2017) (elements of vicarious copyright infringement). Finally, Mr. Dunham's

3    claims for violation of the right of publicity and unfair competition are preempted

4    by the Copyright Act, as the crux of each claim is the alleged unauthorized

5    reproduction of Mr. Dunham's copyrighted works. *Fleet v. CBS, Inc*., 50 Cal. App.

6    4th 1911 (1996) (right of publicity claim preempted by Copyright Act); *Fractional*

7    *Villas, Inc. v. Tahoe Clubhouse*, No. 08cv1396-IEG-POR, 2009 U.S. Dist. LEXIS

8    4191, at *14 (S.D. Cal. Jan. 22, 2009) (unfair competition preempted).

9         Thus, ooShirts and Mr. Lei respectfully request that this Court dismiss Mr.

10   Dunham's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.    FACTUAL BACKGROUND

### A.    **ooShirts Operates an Online Marketplace that Allows Third Party Sellers to Design and Upload Content, and Sell Customized Products**

14        ooShirts operates a print-on-demand platform and online marketplace, which

15   allows customers to buy merchandise designed by independent, third party sellers.

16   (*See* Compl., Ex. D, p. 20 (embedded link, "Sell on TeeChip").) The third party

17   sellers undertake all efforts associated with designing and selling their products:

18   they create and upload digital content, select the product on which their content

19   will appear, and market their products. (*Id.*) Each product has a "product details"

20   page, which provides information about the product, including the product's

21   description and price and images of the product. (*See id.*, Ex. D.) The product

22   details are automatically generated based on content supplied by the sellers.

23   ooShirts does not preview, provide, or control the information submitted by the

24   third party sellers.

25        To use ooShirts' services, all third-party sellers must agree to act lawfully,

26   including with respect to copyrights or trademarks. (*See id.*, Ex. D, p. 11

27   (embedded link, "Terms & Policy").) In accordance with ooShirts' "Terms of Use"

28   ("TOU"), sellers must agree that they "will not upload . . . or otherwise make

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

- 9 -

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

available any content that is in violation of copyright law, trademark law . . . or that violates an individual's right to publicity or privacy." (*Id*.) The third party sellers must also "represent and warrant" that all content "upload[ed] . . . or disseminate[d] . . . will not infringe or otherwise violate the copyright, trademark, or any other right of any third party." (*Id.*) Finally, the TOU require that the third party sellers accept ooShirts' "DMCA and Intellectual Property Policy" (the "IP Policy"). (*Id.*) The IP Policy advises third party sellers of the consequences for infringement, and details the procedure for providing notice of infringement. (*Id*., Ex. D, p. 11 (embedded link, "DMCA").) Upon receiving a notice, ooShirts investigates and takes action. (*See id*.) ooShirts also notifies the third party seller that it has removed the allegedly infringing content and may suspend the seller's selling privileges if it receives more complaints. (*Id.*) However, if the third party seller is a repeat infringer, ooShirts terminates the seller's account. (*Id*.)

In addition, ooShirts employs numerous screening methods in an effort to ensure that the third party seller's designs do not infringe on the intellectual property rights of others. The screening method includes text-based screening of product titles, URLs, and descriptions, as well as sophisticated image-based screening, including detection of text within images, using Google's Vision API. In addition, all design taken down in response to infringement notices are added to a list of disallowed images; ooShirt's system uses this list to detect and block duplicate images from being re-uploaded to the website.

**B.** **Ignoring the Role of the Third Party Users, Mr. Dunham Contends that "Defendants" Marketed and Sold Allegedly Infringing Products**

According to the Complaint, Mr. Dunham is a "popular and successful" ventriloquist and stand-up comedian. (Compl., ¶ 20.) Mr. Dunham asserts that he has become "known to relevant consumers" through his "characters" consisting of five distinct puppets, the use of which forms the "bedrock" of his "persona." (*Id*., ¶ 24.) Mr. Dunham further alleges that he and his trust are the exclusive owners of

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

all relevant intellectual property rights in the "[c]haracters' names, images, and likenesses, including the copyrights, trademarks, and trade dress." (*Id.*, ¶ 26.)

Through his Complaint, Mr. Dunham asserts eleven claims, against ooShirts, Mr. Lei, and as many as fifty other defendants. By inference, it appears that Mr. Dunham is alleging that some of the customized merchandise, designed and marketed by the third party sellers, infringed and misappropriated his intellectual property rights and persona. (*Id.*, ¶¶ 1, 100, 105.) However, Mr. Dunham's Complaint is not pled in such a straightforward fashion. Instead, relying on generalized allegations against "Defendant" as a whole, Mr. Dunham attempts to minimize, and otherwise ignore, the critical role that the third party users played in the purported infringement. To that end, Mr. Dunham attempts to impute the third party users' conduct to all "Defendants," alleging broadly that "Defendants" exploited his intellectual property rights by "marketing, advertising, promoting, manufacturing, selling, and profiting off of consumer products" that incorporated his "registered copyrights and trademarks." (*Id.*, ¶¶ 2, 35-37, 121.)

In pleading as such, Mr. Dunham makes only sparse allegations against ooShirts and Mr. Lei, none of which provide clarity as to their specific role in the purported acts of infringement. In particular, Mr. Dunham alleges:

- Mr. Lei and ooShirts "fraudulently profit off of [the COVID-19] tragedy" by infringing the "intellectual property and persona" of Mr. Dunham (*Id.*, ¶ 1.)

- ooShirts does "business as www.teechip.com and www.teechili.com," and "has been sued on multiple occasions for the same conduct," which Mr. Dunham contends evidences that "Defendants' illegal acts are knowing and willful." (*Id.*, ¶¶ 4, 10-11, 39.)

- Mr. Lei, as one of ooShirts' "principal members" or "owners," "directly owned, controlled, dominated, used, managed and operated Ooshirts," and failed to follow corporate formalities and maintain a corporate identity separate and distinct" from ooShirts (*Id.*, ¶¶ 10-11, 14.)

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

### III.   LEGAL STANDARD

To survive a motion to dismiss brought under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires a plaintiff to allege facts that add up to "more than a sheer possibility that a [d]efendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id*. at 679. And, while a court must generally accept factual allegations as true, it should not draw unreasonable inferences, credit conclusory legal allegations cast in the form of factual allegations, or credit allegations inconsistent with matters subject to judicial notice. *See Twombly*, 550 U.S. at 553-56, 558.

### IV.   LEGAL ARGUMENT

**C.   The Complaint Violates Federal Rule of Civil Procedure 8, As It Fails to Attribute Any *Specific* Conduct to a *Specific* Defendant**

Federal Rule of Civil Procedure 8 ("Rule 8") requires that a complaint contain "a short plain statement," which provides defendants fair notice of the grounds upon which it rests. Fed. R. Civ. Proc. 8(a)(2). A complaint, however, "which lump[s] together . . . multiple defendants in one broad allegation fails to satisfy [the] notice requirement of Rule 8(a)(2)." *Boyer v. Becerra*, No. 17-cv-06063-YGR, 2018 U.S. Dist. LEXIS 72470, at *17 (N.D. Cal. Apr. 30, 2018); *see Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (dismissing complaint where "all defendants are lumped together in a single, broad allegation").

Thus, where an action is brought against multiple defendants, the plaintiff must state, "what role each [d]efendant played in the alleged harm." *Better Homes*

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

*Realty, Inc. v. Watmore*, No. 3:16-cv-01607-BEN-MDD, 2017 U.S. Dist. LEXIS 59982, at *9-10 (S.D. Cal. Apr. 18, 2017) (dismissing complaint for failure to provide fair notice, where it merely contained "cursory references" to individual defendants and allegations against "all defendants"). For example, in *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 U.S. Dist. LEXIS 106865 (N.D. Cal. Sep. 20, 2011), the plaintiffs grouped together eight defendants and set forth generalized allegations against those "defendants" as a whole. *Id.* at *26-27.  The court found that, "by lumping all eight of [the defendants] together," plaintiffs had "not stated sufficient facts to state a claim for relief that is plausible against *one* [d]efendant." *Id.* at *26 (emphasis in original).

Notably, this requirement that a plaintiff plead <u>each</u> defendant's role in the alleged harm extends to matters involving named defendants lumped together with fictitiously-named defendants. *See Crisp v. Kernan*, No. 2:17-cv-2431 KJN P, 2018 U.S. Dist. LEXIS 96221, at *15 (E.D. Cal. June 7, 2018) ("[P]laintiff does not identify each doe defendant and his or her alleged act . . . This lack of information is insufficient to put prospective defendants on notice . . ."). For example, in *Gonzales v. City of Clovis*, No. 1:12-cv-00053-AWI-SKO, 2013 U.S. Dist. LEXIS 12719 (E.D. Cal. Jan. 29, 2013), the plaintiff set forth generalized allegations against all "Defendants," which included a single named defendant and seventy-five fictitiously named defendants. *Id.* at *37-38. There, the court dismissed the complaint, holding that the plaintiff must "allege each Defendant's conduct or participation in the events." *Id.* at 38. The court further instructed that, although the plaintiff may "may use "Doe" designations," he must "distinguish each defendant" and "identify how each defendant, including those named as Doe, is liable . . ." *Id.*

Here, Mr. Dunham makes no attempt to distinguish the fifty-two entity and individual defendants. (*See generally* Compl.) Instead, he lumps the defendants together and makes generalized allegations against "Defendants" as a whole. (*Id.*) Indeed, of the 126 paragraphs contained in the Complaint, only six of the

- 13 -

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

paragraphs even reference ooShirts or Mr. Lei. (*See* Compl., ¶¶ 1, 4, 10-11, 14, 39.) Those six paragraphs, however, shed no light on any specific conduct by ooShirt or Mr. Lei that brought about the Complaint. (*See* Section II. for summary of six paragraphs.) Such cursory references to ooShirts and Mr. Lei, coupled with the numerous allegations against all "Defendants," are insufficient to provide fair notice of Mr. Dunham's claims. *Watmore*, 2017 U.S. Dist. LEXIS 59982, at *11.

Mr. Dunham's generalized allegations prove particularly problematic due to the subject matter of the Complaint: in pleading direct infringement, Mr. Dunham alleges that "Defendants" exploited his intellectual property rights by "advertising, distributing, and/or selling the infringing products" (Compl., ¶ 45); and, in support of secondary infringement, Mr. Dunham pleads "Defendants" "contribut[ed] to" and had "the legal right to stop or limit" the infringement (*id.*, ¶¶ 95, 100-101). Such allegations fail to provide any clarity, as to which of the "Defendants" is the alleged direct infringer and which of the "Defendants" are the purported secondary infringers. Further, even assuming that Mr. Dunham did, in fact, intend to allege direct and secondary infringement claims against each of the "Defendants," a proposition at odds with the construction and premise of direct and secondary liability,[1] the allegations remain improper: fair notice dictates that a plaintiff plead each defendant's <u>specific conduct</u>. *See In re iPhone Application Litig.*, 2011 U.S. Dist. LEXIS 106865, at *22 (requiring allegations pertaining to "each Defendants' conduct or role in that harm"). Instead of pleading such, Mr. Dunham sets forth a laundry list of the various ways that all "Defendants" allegedly violated his intellectual property interests. (*See* Compl., ¶ 2 ("marketing, advertising, promoting, manufacturing, selling, and profiting").)

---

[1] "Secondary infringement . . . is intended to distinguish liability resulting from the infringing activities of third parties . . . from direct infringement." *Fonovisa, Inc. v. Napster, Inc.*, No. C 01-02669 MHP, 2002 U.S. Dist. LEXIS 4270, at *27 n.7 (N.D. Cal. Jan. 28, 2002)). Accordingly, a direct and secondary infringer cannot be one in the same. *See id.* Indeed, if, in fact, a direct infringer could also be held liable as a secondary infringer, the distinction between direct and secondary liability would collapse.

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

Thus, requiring a response to the Complaint would improperly saddle "Defendants" with the "exceedingly difficult, if not impossible" task of preparing a response to inappropriately broad and generalized allegations. *In re iPhone Application Litig.*, 2011 U.S. Dist. LEXIS 106865, at *26-27. As such, Mr. Dunham's Complaint should be dismissed.

**D.    Mr. Lei, an Alleged Corporate Officer, Must Be Dismissed, As Mr. Dunham Pleads No Facts in Support of Alter Ego Liability**

Mr. Dunham seeks to impose liability on Mr. Lei by alleging that he is one of ooShirts' "principal members, managers, shareholders, officers, directors and/or owners." (Compl., ¶ 14.) However, "[d]irectors or officers of a corporation do not incur personal liability for torts of the corporation merely by reason of their official position." *Balsam v. Trancos, Inc.*, 203 Cal. App. 4th 1083, 1109 (2012). Rather, to hold a corporate officer personally liable, a plaintiff must pierce the corporate veil. *See Leek v. Cooper*, 194 Cal. App. 4th 399, 411 (2011) ("The corporate form will be disregarded only in narrowly defined circumstances and only when the ends of justice so require."). Piercing the corporate veil requires factual allegations that, due to the "unity of interest and ownership between the corporation and the individual," "adherence to the fiction of the separate" corporate existence would "sanction a fraud, promote injustice, or cause an inequitable result." *Misik v. D'Arco*, 197 Cal. App. 4th 1065, 1069, 1072 (2011). Here, Mr. Dunham offers no more than a formulaic and conclusory recitation of these elements. (*See* Compl., ¶ 14 (alleging ooShirts is the "alter ego" of Mr. Lei).) As such, all claims against Mr. Lei should be dismissed. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' . . . will not do.").

**E.    Claim No. 1: The Direct Copyright Infringement Claim Fails, As ooShirts was Not the Most Significant Cause of the Alleged Copying**

A claim for direct copyright infringement, requires a showing that defendant was the "most significant and important cause of the copy." *Fox Broad. Co., Inc. v.*

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

- 15 -

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

1   *Dish Network L.L.C.*, 747 F.3d 1060, 1067 (9th Cir. 2014); *see Perfect 10, Inc. v.*

2   *Giganews, Inc.*, 847 F.3d 657, 666 (9th Cir. 2017) (A claim for "direct

3   infringement requires the plaintiff to show causation . . . by the defendant.").

4        For example, in *Fox Broad. Co., Inc. v. Dish Network L.L.C.*, 747 F.3d 1060

5   (9th Cir. 2014), the Ninth Circuit affirmed the district court's ruling that the

6   plaintiff had not presented facts that "crossed over the line that leads to direct

7   liability." 747 F.3d at 1067-68. There, the district court acknowledged Dish

8   Network's discretion over the copying, as it "decide[d] how long copies [were]

9   available for viewing," "maintain[ed] the authority to modify the start and end

10  times of the primetime block," and prevented users from "stop[ping] a copy from

11  being made once the recording ha[d] started." *Id.* However, the district court noted

12  that it was the user, not Dish Network, who "must take the initial step of enabling"

13  the copying. *Id.* at 1067. On those facts, the district court held it was Dish

14  Network's <u>users</u>, rather than Dish Network, who were "the most 'significant and

15  important' cause of the copy." *Id.* The Ninth Circuit affirmed, holding that "these

16  facts do not establish that Dish [Network] made the copies." *Id.* at 1063 & 1068

17  (denying petition for rehearing; the district court "did not abuse its discretion in

18  concluding that the user is the most 'significant and important' cause of the

19  copy.").

20       Additionally, in *CoStar v. Loopnet*, 373 F.3d 544 (4th Cir. 2004), the court

21  held that it was LoopNet's <u>users</u>, rather than LoopNet, who committed the direct

22  infringement. 373 F.3d at 546. In particular, the court held that LoopNet, was

23  "simply the owner and manager of a system used by others who are violating

24  [plaintiff's] copyrights," but, as it was "not an actual duplicator itself, it is not

25  directly liable for copyright infringement." *Id.* In making its ruling, the court

26  compared LoopNet to a traditional copy machine, noting: "a copy machine owner

27  who makes the machine available to the public to use for copying is not, without

28  more," liable under the Copyright Act. *Id.* at 550 & 556.

- 16 -

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

Like the plaintiffs in *Fox Broad* and *CoStar*, Mr. Dunham has not alleged (nor can he allege) that ooShirts or Mr. Lei were the "most significant and important cause of the copy." *Fox Broad. Co., Inc.*, 747 F.3d at 1067. In particular, Mr. Dunham asserts that ooShirts is a service provider[2] in the "business of operating online platforms" that "offer for sale a variety of consumer products, including apparel." (Compl., ¶ 32.) However, Mr. Dunham does not allege that ooShirts provides any of the infringing content. (*See generally id.*) Instead, Mr. Dunham contends that unidentified "third parties" "design and upload infringing and counterfeit designs" to websites purportedly owned by ooShirts. (*Id.*, ¶¶ 100 & 105.) As such, ooShirts cannot be considered the "most significant and important cause of the copy," as it is the third party users who took the crucial "initial step" of, "upload[ing]" the allegedly infringing content and "design[ing]" the purportedly infringing goods. (*Id.*) Thus, Mr. Dunham's claim for direct copyright infringement must be dismissed as to ooShirts and Mr. Lei.

## F.  **Claim Nos. 2 & 4: The Direct Trademark Infringement Claims Fail, As Mr. Dunham Does Not Allege Confusion as to Origin**

A claim for trademark infringement requires allegations that the defendant's "use of the mark is likely to cause consumers confusion as to the origin or sponsorship of the defendant's goods." *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 102 (2d Cir. 2010). In *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93(2d Cir. 2010), the Second Circuit addressed whether eBay, a marketplace operator, could be held liable for direct trademark infringement based on its use of the Tiffany mark. There, Tiffany alleged that eBay engaged indirect trademark infringement, by using the mark on its "website and by purchasing sponsored links containing the mark on Google and Yahoo!" 600 F.3d at 102. The court held that because

---

[2] ooShirts' limited role as an online "service provider" is further confirmed in Paragraphs 3, 90, 95, 101, and 105 of Mr. Dunham's Complaint, as he repeatedly attempts to rely on his service of DMCA notices, as a means of establishing Defendants knowledge of the alleged infringement.

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

trademark law does "not prevent one who trades a branded product from accurately describing it by its brand name, so long as the trader does not create confusion by implying an affiliation with the owner of the product," eBay's use of the mark to sell Tiffany goods was lawful. *Id.* Emphasizing that "eBay promptly removed all listings that Tiffany challenged as counterfeit," the court concluded that eBay could not be held liable for direct trademark infringement based on use of the mark in connection with the sale of counterfeit jewelry "because eBay cannot guarantee the genuineness of all of the purported Tiffany products offered on its website." *Id.* at 100 & 103 (emphasis added). The court further explained that eBay's knowledge, if any, that there may be counterfeit products on its site was "not a basis for a claim of direct infringement." *Id.* at 103.

At least one court in Central District has expressed approval of the holding in *Tiffany*, acknowledging that the "DMCA-style notice and takedown procedure" employed by Ebay helped "fill[ ] the gap left by Congress," and "simplify[ied] the process for the removal of problematic material upon notice." *Acad. of Motion Picture Arts & Scis. v. GoDaddy.com, Inc.*, No. CV 10-03738 AB (CWx), 2015 U.S. Dist. LEXIS 120871, at *87-88 (C.D. Cal. Sep. 10, 2015).

Here, Mr. Dunham fails to plead any facts in support of his allegation that the purported use of the marks tends "to represent that the product originate[d]" or was "in some way affiliated or connected" with Mr. Dunham. (Compl., ¶¶ 77 & 57.) Instead, Mr. Dunham furnishes Exhibits C and D, alleging that they depict "example[s] of the infringing conduct." (*Id.*, ¶ 35.) However, the Exhibits merely depict use of the mark in relation to products, which Mr. Dunham alleges "incorporat[e] the Dunham brand." (*Id.*, ¶ 26.) As such, assuming the validity of Mr. Dunham's allegations, the marks are purportedly used to "accurately describe" the products. *Tiffany (NJ) Inc.*, 600 F.3d at 103. As a marketplace operator, ooShirts "cannot guarantee the genuineness" of the products, which are designed and sold by "third party" sellers, who warrant that they have the "licenses

- 18 -

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

necessary to use . . . and distribute" the content. (*Id.* at 103; Compl., ¶¶ 100 & 105, Ex. D, p. 11.) However, ooShirts does undertake efforts to prevent confusion, through its anti-infringement process, which, like the defendant in *Tiffany*, includes a DMCA notice process. (*Id.*, ¶ 95 & Ex. D, p. 11; *GoDaddy.com, Inc.*, 2015 U.S. Dist. LEXIS 120871, *87-88.) As such, the claim for direct trademark infringement must be dismissed. *Tiffany (NJ) Inc.*, 600 F.3d at 103.

## G.   Claim Nos. 6-9: The Secondary Infringement Claims Fail

### 1.   All Secondary Infringement Claims Fail Because Such Claims Require Underlying Direct Infringement by a *Third Party*

"All theories of secondary liability for copyright and trademark infringement require some underlying direct infringement by a third party." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 591 F. Supp. 2d 1098, 1104 (N.D. Cal. 2008). Here, Mr. Dunham's secondary infringement claims fail, as he does not sufficiently plead a claim for direct infringement against any third party. (*See generally* Compl.) Specifically, Mr. Dunham's allegations of direct infringement against ooShirts and Mr. Lei cannot also form the basis for secondary liability on the part of ooShirts and Mr. Lei. *Fonovisa, Inc. v. Napster, Inc.*, No. C 01-02669 MHP, 2002 U.S. Dist. LEXIS 4270, at *27 n.7 (N.D. Cal. Jan. 28, 2002) ("Secondary infringement . . . is intended to distinguish liability resulting from the infringing activities of third parties . . . from direct infringement.") Rather, the secondary infringement claims against ooShirts and Mr. Lei must be based on an underlying claim for "direct infringement by a third party." *MDY Indus., LLC v. Blizzard Entm't, Inc.*, Nos. 09-15932, 09-16044, 2011 U.S. App. LEXIS 3428, at *10 (9th Cir. Feb. 17, 2011) (emphasis added).

Seemingly acknowledging this pleading requirement, Mr. Dunham alleges that "third parties" "design[ed] and upload[ed] infringing designs" to websites operated by the "Defendants." (Compl., ¶¶ 100 & 105.) However, this bare-bones allegation, which does not address any of the elements of trademark or copyright

- 19 -

infringement, is insufficient to state a claim for direct infringement against any third party. *Moroccanoil, Inc. v. Perfumes World Com, Inc.*, 234 F. Supp. 3d 1026, 1030 (C.D. Cal. 2017) (reciting trademark infringement elements); *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991) (reciting copyright infringement elements). As Mr. Dunham does not adequately plead direct infringement by a third party, the secondary infringement claims must be dismissed.

> ### 2.  Contributory Copyright Infringement Claim Requires Actual or Constructive Knowledge of the Direct Infringement

Contributory infringement requires the defendant's knowledge of direct infringement by a third party. *UMG Recordings, Inc. v. Bertelsmann AG*, 222 F.R.D. 408, 411 (N.D. Cal. 2004). Mr. Dunham attempts (unsuccessfully) to allege ooShirts' knowledge of infringement in two ways.

First, Mr. Dunham contends that Defendants "have been, and continue to be aware of" the purported infringement because the relevant products were listed for sale on TeeChip and because of Mr. Dunham's service of "past" DMCA notices. (Compl., ¶ 90.) However, in pleading knowledge, a plaintiff cannot rely on a theory that the defendant "should-have-known" of the infringement. *UMG Recordings, Inc. v. Shelter Capital Partners Ltd. Liab. Co.*, 718 F.3d 1006, 1021 (9th Cir. 2013) ("Cases analyzing knowledge in the secondary copyright infringement context . . . counsel against [the] should-have-known approach.").

Instead, Mr. Dunham must plead "actual knowledge of [the] specific acts of infringement." *Luvdarts, Ltd. Liab. Co. v. AT&T Mobility, Ltd. Liab. Co.*, 710 F.3d 1068, 1072 (9th Cir. 2013) (emphasis added). Mr. Dunham fails to do so. The mere operation of a website that "allows for the exchange of copyrighted material," is insufficient to establish knowledge, "absent any specific information which identifies infringing activity." *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1021 (9th Cir. 2001). Further, the "past" notices, which did not address the material at issue in this litigation, fail to inform as to the "specific acts of

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

infringement." *Luvdarts, Ltd. Liab. Co.*, 710 F.3d at 1072 (holding vague notices of infringement insufficient, as such failed to provide "actual knowledge of [the] specific acts of infringement"); *see Perfect 10, Inc. v. Giganews, Inc.*, No. CV 11-07098-AB (SHx), 2014 U.S. Dist. LEXIS 183590, at *31-32 (C.D. Cal. Nov. 14, 2014) ("[T]he law . . . place[s] the burden of . . . identifying the potentially infringing material . . . squarely on the owners of the copyright.")

Second, Mr. Dunham alleges, without any supporting facts, that ooShirts was "willfully blind" to the infringement occurring on TeeChip. (Compl., ¶ 91.) "Willful blindness is knowledge, in copyright law . . . as it is in the law generally." *In re Aimster Copyright Litig.*, 334 F.3d 643, 650 (7th Cir. 2003); *see Tiffany (NJ) Inc.*, 600 F.3d at 110 n.15 ("The principle that willful blindness is tantamount to knowledge is hardly novel."). "A person is 'willfully blind' . . . amounting to knowledge where the person 'was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.'" *Viacom Int'l, Inc. v. YouTube, Inc.*, 676 F.3d 19, 35 (2d Cir. 2012). Mr. Dunham fails to set forth any facts that would demonstrate that ooShirts was "aware of a high probability" of the specific instances of infringement at issue. (Compl., ¶ 91; *Ashcroft*, 556 U.S. at 678 (2009) ("Threadbare recitals . . . supported by mere conclusory statements, do not suffice.").) Instead, Mr. Dunham actually concedes that ooShirts did not "consciously avoid" discovery of the infringement, as it investigated Mr. Dunham's "past" notices and took down the infringing material. (Compl., ¶ 90.)

Accordingly, as both of Mr. Dunham's theories of knowledge fail, Mr. Dunham's claim for contributory copyright infringement must be dismissed.

### 3.   The Claim for Vicarious Copyright Infringement Fails Because Mr. Dunham Does Not Plead a "Right and Ability to Control"

To plead a claim for vicarious copyright infringement, Mr. Dunham must allege facts sufficient to show that ooShirts had the "right and ability to supervise" the third party's infringing conduct. *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

- 21 -

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

657, 673 (9th Cir. 2017). In support of this claim, Mr. Dunham alleges that ooShirts had "the ability and means" to monitor the infringing websites and the "right to remove" the infringing products. (Compl., ¶ 101.) The Ninth Circuit, however, has held such allegations are insufficient to support a right and ability to supervise the conduct of another. *UMG Recordings, Inc.*, 718 F.3d at 1029. In particular, the Ninth Circuit has held that, in order for a service provider like ooShirts to have a "right and ability to control," "something more" must be plead, beyond the mere  "ability to remove" and "search[ ] for potentially infringing content." *Id.* at 1030. Instead, a plaintiff must plead an ability to "exert[] substantial influence on the activities of users." *Id.*; *see also Rosen v. eBay, Inc.*, No. CV 13-6801 MWF (Ex), 2015 U.S. Dist. LEXIS 49999, at *31-32, *34 (C.D. Cal. Jan. 16, 2015) (finding product listing requirements do not constitute "substantial influence").

Applying this standard, in *Ventura Content, Ltd. v. Motherless, Inc.*, No. 2:11-cv-5912-SVW-FMO, 2013 U.S. Dist. LEXIS 189948, at *39-41 (C.D. Cal. July 3, 2013), the court held that defendant did not exert substantial influence over user activity, even though the defendant had an awards program for the most content uploaded and approved the "groups" in which the context was posted. Additionally, in *Milo & Gabby, LLC v. Amazon.com, Inc.*, No. C13-1932RSM, 2015 U.S. Dist. LEXIS 92890 (W.D. Wash. July 16, 2015), the court noted that a service provider does not have the "practical ability to stop or limit infringing conduct" simply because "(1) the infringing content resides on the service provider's system; (2) the service provider had the ability to remove such material; (3) the service provider could have implemented, and did implement, filtering systems; and (4) the service provider could have searched for potentially infringing content." 2015 U.S. Dist. LEXIS 92890, at *23. On that basis, the court found that Amazon did not exercise "substantial influence" over its users, even though

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

Amazon provided fulfillment services, including product storage and shipping, to a direct infringer. *Id.* at *23-24.

As such, Mr. Dunham does not adequately plead a "right and ability to supervise," and therefore his claim for vicarious copyright infringement must be dismissed. *UMG Recordings*, 718 F.3d at 1030.

**4.      The Contributory Trademark Infringement Claim Fails, As Mr. Dunham Does Not Plead Knowledge of the Infringement**

A contributory trademark infringement claim requires that a defendant either "intentionally induce[ ] the primary infringer to infringe," or "continue[ ] to supply an infringing product to an infringer with knowledge that the infringer is mislabeling the particular product supplied." *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007). Here, Mr. Dunham does not allege inducement of another party to infringe. (Compl., ¶¶ 94-98.) Instead, he contends that "Defendants" continued to supply services to a direct infringer by displaying, promoting, creating, and distributing the allegedly infringing products. (*Id.*, ¶ 95.) Under this theory, Mr. Dunham is required to plead "actual or constructive knowledge." *Louis Vuitton Malletier, S.A.,* 658 F.3d at 943 (contributory trademark infringement requires a plaintiff to "prove that defendants provided their services with actual or constructive knowledge that the users . . . were engaging in trademark infringement."). Like contributory copyright infringement, claims for contributory trademark infringement require that a defendant possess more than general knowledge that its service is being used to infringe. *Tiffany (NJ) Inc. v. eBay, Inc.,* 576 F. Supp. 2d 463, 508 (S.D.N.Y. 2008), *aff'd* 600 F.3d 93, 107 (2d Cir. 2010).

Although knowledge may be demonstrated through "willful blindness," it cannot be established by "mere negligence." *Hard Rock Cafe Licensing Corp. v. Concession Servs., Inc*., 955 F.2d 1143, 1148-50 (7th Cir. 1992). Rather, there must be a "deliberate failure to investigate suspected wrongdoing." *Id.* at 1149. For example, in *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259 (9th Cir. 1996), the

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

- 23 -

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

1   Ninth Circuit held that a market operator acted in a willfully blind manner by
2   failing to investigate the infringement after a sheriff raided the market, seized
3   38,000 counterfeit music recordings, and notified the operator that there was
4   ongoing infringement. 76 F.3d at 261, 264-65. By comparison, in *Tiffany (NJ) Inc.*
5   *v. eBay, Inc.,* 576 F. Supp. 2d 463 (S.D.N.Y. 2008), plaintiff asserted that the
6   defendant, who hosted a marketplace, was "willfully blind," based on its receipt of
7   1,182 notices from plaintiff, in addition to numerous notices from other non-
8   parties. *Id.* at 513. However, in response to plaintiff's notices, the defendant took
9   reasonable steps to investigate and stop that wrongdoing. *Id.* at 515. On that basis,
10   the court held that defendant was not willfully blind, as it had not "purposefully
11   contrived to avoid learning of counterfeiting on its website" or "failed to
12   investigate once it learned of such counterfeiting." *Id*.

13   Here, Mr. Dunham contends that in the past two years, he sent "multiple"
14   notices to "Defendants" and that, upon receipt of such notices, the relevant product
15   listings were taken down. (Compl., ¶ 95.) Mr. Dunham's vague allegation of
16   "multiple" notices is insufficient to plead circumstances comparable to *Fonovia*,
17   where 38,000 counterfeit goods were seized. *Fonovisa, Inc.*, 76 F.3d at 261. And,
18   in any event, much like *Tiffany*, Mr. Dunham's allegations confirm that
19   "reasonable steps to investigate and stop" the infringement were taken, as the
20   identified infringing material was taken down upon receipt of the notices. *Tiffany*
21   *(NJ) Inc.*, 576 F. Supp. 2d at 515. As such, Mr. Dunham does not adequately plead
22   a "deliberate failure to investigate a suspected wrongdoing" and his claim for
23   contributory trademark infringement must be dismissed. *Hard Rock Cafe Licensing*
24   *Corp.*, 955 F.2d at 1149.

25   **5.   The Vicarious Trademark Infringement Claim Fails, As Mr.**
26   **Dunham Does Not Allege an Apparent or Actual Partnership**

27   Vicarious trademark infringement requires plaintiff to plead facts sufficient
28   to show that the "defendant and the infringer have an apparent or actual

- 24 -

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

1   partnership, have authority to bind one another in transactions with third parties or

2   exercise joint ownership or control over the infringing product." *Perfect 10, Inc.*,

3   494 F.3d at 807. An "apparent or actual partnership," or "authority to bind," must

4   be supported by more than "off-hand references to customers as 'partners'" or

5   "vague, puffery-like references to a 'partnership.'" *Louis Vuitton Malletier, S.A.*,

6   591 F. Supp. 2d at 1113; *see Gucci Am., Inc. v. Frontline Processing Corp.*, 721 F.

7   Supp. 2d 228, 247 (S.D.N.Y. 2010) (finding that, while the services were "crucial,"

8   there was "insufficient evidence to plausibly infer" a partnership").

9       For example, in *Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 793 (6th Cir.

10  2015), the court held that there was an apparent partnership where the defendant

11  informed its customers that it was "partnering" with another third party, with

12  whom it had "partnered" for years. By comparison, in *Louis Vuitton Malletier,*

13  *S.A.*, 591 F. Supp. 2d at 1113, n.17, the court held that defendant's provision of IP

14  addresses and server space to its customers was insufficient "to exhibit the type of

15  behavior and relationship that can be considered an actual or apparent partnership."

16  Likewise, in *Coach, Inc. v. Goodfellow*, 717 F.3d 498, 502-503 (6th Cir. 2013), the

17  court held that there was no evidence to support a partnership between a flea

18  market owner and a vendor.  Finally, in *Rosenshine v. A. Meshi Cosmetics Indus.*,

19  No. 18-cv-3572 (LDH), 2020 U.S. Dist. LEXIS 61315, at *25 (E.D.N.Y. Mar. 30,

20  2020), the court held plaintiff failed to allege a partnership where he merely plead

21  that defendants "each have the ability to control the actions of the other" and

22  "derive[d] a direct financial benefit from the illegal acts."

23      Here, Mr. Dunham contends that "Defendants" and certain unidentified

24  "third parties" entered into a relationship, whereby the third parties "design[ed]

25  and upload[ed] infringing and counterfeit designs" to websites purportedly

26  operated by Defendants. (Compl., ¶ 105.) However, providing "third parties" with

27  the ability to upload their designs to a website merely describes a standard website

28  function; it does not evidence any manifestation by "Defendants" of an intent to

- 25 -

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

enter into a "partnership." *Louis Vuitton Malletier, S.A.*, 591 F. Supp. 2d at 1113, n.17 (providing IP addresses and servers insufficient). As such, Mr. Dunham's claim for vicarious trademark infringement must be dismissed.

**H.**    **Claim No. 3: The Claim for Dilution Fails as Mr. Dunham Offers Nothing More Than a Mere Formulaic Recitation of the Elements**

Dilution may be alleged through one of two distinct theories: "blurring" or "tarnishment." *Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254, 1260 (N.D. Cal. 2003). Blurring occurs where another's use of a mark creates "the possibility that the mark will lose its ability to serve as a unique identifier of the [mark holder's] product." *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1326 n.7 (9th Cir. 1998). Tarnishment, by contrast, occurs where a "famous mark is improperly associated with an inferior or offensive product or service. *Wham-O, Inc.*, 286 F. Supp. 2d at 1260.

In support of his claim for dilution, Mr. Dunham alleges:

> Defendants' unauthorized use of the . . . Dunham Trademarks is likely to dilute . . . the distinctive quality of the famous . . . Trademarks, in that Defendants' conduct is likely to create . . . an association between the Infringing Products and the . . . Trademarks, which . . . lessens the capacity of those famous marks to identify and distinguish products marketed and sold by Plaintiff . . . .

(Compl., ¶ 67.) Mr. Dunham's allegation, which offers no supportive facts, or clarification as to his intended theory of dilution (i.e., blurring or tarnishment), is insufficient to state a claim for dilution. In *Klein Elecs., Inc. v. Boxwave Corp.*, No. 10cv2197 WQH (POR), 2011 U.S. Dist. LEXIS 69525 (S.D. Cal. June 27, 2011), the plaintiff, much like Mr. Dunham here, alleged that defendant's use of its mark would "cause, confusion, blurring, tarnishment, and dilution of the distinctive quality" of the mark "in the minds of consumers," making it difficult to "distinguish" plaintiff's services, and causing "a negative association" with the mark. *Id.* at \*6-7. There, the court dismissed plaintiff's dilution claim, concluding

- 26 -

that plaintiff had alleged no "more than labels and conclusions." *Id.* at \*7. Thus, as Mr. Dunham, like the plaintiff in *Klein*, merely offers "a formulaic recitation of the elements of a cause of action," his claim for dilution should be dismissed. *Twombly*, 550 U.S. at 548.

### I.    Claim No. 5: The Unfair Competition Claim Fails

#### 1.    The Unfair Competition Claim Violates Rule 8, As it is Labeled a "Common Law" Claim, But Alleged as a Statutory Claim

Statutory and common law unfair competition claims are distinct claims that must be separately plead. *See Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1142, 1153 (9th Cir. 2008) (separately affirming dismissal of common law and statutory unfair competition claims). While a statutory claim requires an unlawful, unfair or fraudulent act (in accordance with Business and Professions Code § 17200), a common law claim has four elements: "(1) the plaintiff invested substantial time, skill, or money in developing its property; (2) the defendant appropriated and used the property at little or no cost; (3) the plaintiff did not authorize or consent to the property's appropriation and use; and (4) the plaintiff was injured by the appropriation and use." *City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1111 (S.D. Cal. 2012).

Here, Mr. Dunham's unfair competition claim is labeled as one brought under "common law," yet Mr. Dunham, in fact, alleges a statutory claim: "Defendants have committed acts of unfair competition, proscribed by . . . Business and Professions Code § 17200." (Compl., ¶ 85.) As it is unclear whether Mr. Dunham intends to set forth a statutory or common law claim, the unfair competition claim must be dismissed. *See* Fed. R. Civ. Proc. 8; *Owen v. City of Hemet*, No. ED CV 19-1388-ODW(E), 2020 U.S. Dist. LEXIS 99463, at \*18 (C.D. Cal. Feb. 10, 2020) ("A complaint is subject to dismissal if one cannot determine from the complaint who is being sued, on what theory and for what relief.").

///

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

**2.      The Unfair Competition Claim is Preempted by the Copyright Act**

If construed in the manner in which it is plead, the unfair competition claim appears to be a statutory claim brought under Business and Professions Code, section 17200, *et seq.* (*See* Compl., ¶ 85 (alleging that "actions constitute unlawful, unfair, and/or fraudulent business acts or practices" in accordance with Business and Professions Code ß 17200 et seq.").)

In support of the claim, Mr. Dunham alleges that the "Defendants" committed acts of unfair competition, by engaging in "the practices and conduct <u>referred to above</u>." (*Id.*, ¶ 85 (emphasis added).) The conduct referenced "above" includes the purported violations of the Copyright Act and, therefore, the claim must be dismissed as preempted by the Copyright Act. (*See* Compl., ¶¶ 43-52; s*ee Fractional Villas, Inc. v. Tahoe Clubhouse*, No. 08cv1396 - IEG - POR, 2009 U.S. Dist. LEXIS 4191, at *14 (S.D. Cal. Jan. 22, 2009) (dismissing claim; "To the extent the [unfair competition] claim relies only on copyright infringement as a form of unfair competition, the claim is preempted by the Copyright Act."); *Blue Nile, Inc. v. Ice.com, Inc.*, 478 F. Supp. 2d 1240, 1250 (W.D. Wash. 2007) (finding that "plaintiff's unfair competition claim is dismissed as preempted because, by incorporating the copyright claims by reference, the unfair competition claim is based on rights equivalent to those protected by copyright"); *Del Madera Props. v. Rhodes & Gardner, Inc.*, 820 F.2d 973, 977 (9th Cir. 1987) (dismissing an unfair competition claim as preempted by the Copyright Act).)

**J.      <u>Claim Nos. 10-11: The Publicity Rights Claims Are Preempted, As Mr. Dunham's Persona Implicates His Copyrighted "Characters"</u>**

A state law right to publicity action is preempted where the conduct alleged to violate the right consists only of copying the work in which the plaintiff claims a copyright. *See Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1919 (1996) (indicating claim is preempted if the subject of the claim "come[s] within the subject matter or scope of copyright protection" and "the right asserted under state law" is "equivalent to

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

1    the exclusive rights in copyrighted works); *Motown Record Corp. v. George A.*

2    *Hormel & Co*., 657 F. Supp. 1236, 1238-39 (C.D. Cal. 1987) (indicating the same).

3        To make such a determination, courts look at the "crux" of a right of publicity

4    claim to ascertain whether the claim is based on the misappropriation of an identity

5    or the infringement of a copyright. *See Maloney v. T3Media, Inc.*, 853 F.3d 1004,

6    1012-13 (9th Cir. 2017) ("The crux of the issue is thus deciding when a publicity-

7    right claim seeks to vindicate misuse of an individual's likeness, as opposed to

8    merely interfering with the distribution, display, or performance of a copyrighted

9    work."); *Laws v. Sony Music Entertainment, Inc*., 448 F.3d 1134, 1137-46 (9th Cir.

10   2006) (holding right of publicity claims preempted by the Copyright Act because

11   the claims were not derived from the plaintiff's "personal" identity or her voice,

12   but rather the use of her copyrighted sound clip performance).

13       In *Fleet v. CBS, Inc*., 50 Cal. App. 4th 1911 (1996), a group of actors sued

14   CBS, owners of the copyright of a film in which they performed, asserting that

15   they had not been paid and, therefore, CBS's distribution of the film violated their

16   rights of publicity. *Id*. at 1915-16. There, the court held the actors' right of

17   publicity claims were preempted by copyright law because the publicity claims

18   were essentially derived from the copyrighted performances in the film and not the

19   actors' identities. *Id*. at 1924 ("A claim asserted to prevent nothing more than the

20   reproduction, performance, distribution, or display of a dramatic performance

21   captured on film is subsumed by copyright law and preempted.").

22       Here, Mr. Dunham defines the "bedrock" of his "persona" as consisting of

23   his use of the copyrighted "characters." (Compl., ¶ 24.) He contends that his rights

24   were violated, as Defendants used his persona in connection with their

25   "advertisement, marketing, promotion, manufacture, and sale" of the purportedly

26   infringing products. (*Id.*, ¶ 37.) In other words, the "crux" of Mr. Dunham's claims

27   is the alleged unauthorized reproduction and sale of his copyrighted works (i.e., the

28   "characters"). *Maloney*, 853 F.3d at 1012-13. As the publicity right claim is

nothing more than a thinly disguised copyright claim, it is preempted by the Copyright Act and should therefore be dismissed with prejudice.

## K.   Claim Nos. 5, 10-11: Each State Law Claim is Barred By 47 U.S.C. § 230

The Communications Decency Act ("CDA") provides that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). The CDA defines an "interactive computer service" as "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server." *Id.*, § 230(f)(2).

The Ninth Circuit has interpreted the CDA's immunity "broadly," holding that the "CDA bars state law intellectual property claims." *See Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 939 (S.D. Cal. 2013) (*citing Perfect 10, Inc. v. CCBill LLC*, 488 F.3d 1102, 1118 (9th Cir. 2007)). In addition, courts have held a wide array of state law claims to fall within the CDA's immunity, where such claims "are predicated on the same conduct as [the] state law intellectual property claims: the conduct of the content providers." *Id.* at 939. In determining whether a claim is "barred by the CDA, the CDA should be given the expansive reading that Congress intended." *Asia Econ. Inst. v. Xcentric Ventures LLC*, No. CV 10-01360 SVW (PJWx), 2011 U.S. Dist. LEXIS 145380, at *20-21 (C.D. Cal. May 4, 2011).

In accordance with the CDA's broad reach, numerous courts have held service providers immune from claims for unfair competition and violation of the right of publicity. *See Evans v. Hewlett-Packard Co.*, No. C 13-02477 WHA, 2013 U.S. Dist. LEXIS 115856, at *9 (N.D. Cal. Aug. 15, 2013) (granting defendant's motion to dismiss, under Section 230, as to misappropriation of likeness); *Joude v. WordPress Found.,* No. C 14-01656 LB, 2014 U.S. Dist. LEXIS 91345, at *24 (N.D. Cal. July 3, 2014) ("Automattic has Section 230 immunity from Plaintiffs' misappropriation of likeness claim . . ."); *Gentry v. eBay, Inc.*, 99 Cal. App. 4th 816, 836 (2002) (unfair competition law claims found to be "inconsistent with and

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

1   barred by section 230"); *Asia Econ. Inst.*, 2011 U.S. Dist. LEXIS 145380, at *24

2   (dismissing claim for unfair competition).

3       Each of Mr. Dunham's state law claims falls squarely within the CDA.  The

4   claims for unfair competition and violation of the right of publicity, are based on

5   the conduct of "third parties," who allegedly "design[ed] and upload[ed] infringing

6   designs" to websites purportedly owned by the Defendants. (Compl., ¶¶ 100 &

7   105.) Section 230 provides that, in this circumstance, it is the end-user, not the

8   interactive computer service, who is the publisher of the information at issue. As

9   the claims fall within the scope of the CDA, they must be dismissed.

**L.      Portions of Mr. Dunham's Prayer for Relief Should Be Struck**

11          **1.      The Lanham Act Precludes Recovery of Monetary Damages, As
                    ooShirts is an "Innocent Printer"**

13      Where an infringer engages "solely in the business of printing the mark" and

14  establishes that it is an "innocent infringer" the trademark owner's remedy is

15  limited to "an injunction against future printing." 15 U.S.C. § 1114(2)(A). The

16  phrase "innocent infringer" has been "construed to embrace the 'actual malice'

17  standard[,]" under which an "infringer is 'innocent' unless it acted either (1) with

18  knowledge of the (continued) infringement or (2) with reckless disregard as to

19  whether the material infringed the trademark owner's rights." *Gucci Am., Inc. v.*

20  *Hall & Assocs.*, 135 F. Supp. 2d 409, 419 (S.D.N.Y. 2001) (*citing New York Times*

21  *v. Sullivan*, 376 U.S. 254 (1964).)

22      Here, Mr. Dunham alleges that Defendants "own their own printing

23  facilities," where the allegedly infringing products are "manufactured." (Compl.,

24  ¶¶ 34 & 37.) However, the allegedly infringing content, which is printed onto the

25  products at the direction of third-party end users, is "design[ed] and upload[ed]" by

26  "third parties," not Defendants. (Compl., ¶¶ 100 & 105.) As such, in the absence of

27  "actual malice," Defendants are, as a matter of law, "innocent printers." *Gucci*

28  *Am., Inc.*, 135 F. Supp. 2d at 419. Mr. Dunham fails to adequately plead "actual

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT

Gordon Rees Scully Mansukhani, LLP
633 West Fifth Street, 52nd floor
Los Angeles, CA 90071

malice." Although Mr. Dunham alleges that Defendants' actions were "taken in bad faith with full knowledge and in conscious disregard of [Mr. Dunham's] rights," he fails to set forth any supporting facts. (*See* Compl., ¶¶ 63, 72, 79). As such, the portions of Mr. Dunham's prayer for relief, which seek monetary damages in relation to his trademark claims, should be struck from the Complaint.

**2.    Counterfeiting Damages Are Not Available Unless the Infringer Sold, Offered for Sale, or Distributed the Counterfeit Goods**

15 U.S.C. § 1117(c) allows a plaintiff to recover an award of statutory damages for "use of a counterfeit mark" "in connection with the sale, offering for sale, or distribution of goods." Although Mr. Dunham seeks such an award (Prayer for Relief, ¶ 6), he fails to allege that ooShirts or Mr. Lei made use of any mark "in connection with the sale, offering for sale, or distribution of goods." 15 U.S.C. § 1117(c). Instead, as discussed, Mr. Dunham alleges that "third parties" "design[ed] and upload[ed]" the "infringing and counterfeit designs." (Compl., ¶ 105.) As such, Paragraph 6 of Mr. Dunham's Prayer for Relief must be struck from the Complaint.

## V.    CONCLUSION

For the foregoing reasons, ooShirts and Mr. Lei respectfully request that this Court dismiss Mr. Dunham's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). Further, to the extent this Court is inclined to grant Mr. Dunham leave to amend the pleading, ooShirts and Mr. Lei request that such leave be limited to amendment of those claims, which are not barred as a matter of law.

Dated:  July 6, 2020                    Respectfully submitted,

                                        GORDON & REES SCULLY
                                        MANSUKHANI, LLP

                                        By:  /s/Craig J. Mariam
                                             Craig J. Mariam
                                             Garrett M. Fahy
                                             Stephanie L. Cobau
                                             Attorneys for defendants,
                                             Raymond Lei and ooShirts, Inc.

RAYMOND LEI AND OOSHIRTS' MOTION TO DISMISS THE COMPLAINT