**MARTIN D. SINGER (BAR NO. 78166)**
mdsinger@lavelysinger.com
**T. WAYNE HARMAN (BAR NO. 254089)**
wharman@lavelysinger.com
**JAKE A. CAMARA (BAR NO. 305780)**
jcamara@lavelysinger.com
**LAVELY & SINGER, P.C.**
2049 Century Park East, Suite 2400
Los Angeles, California 90067-2906
Telephone: (310) 556-3501
Facsimile: (310) 556-3615

Attorneys for Plaintiff
JEFF DUNHAM

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| JEFF DUNHAM, as an individual and in his capacity as TRUSTEE OF THE JEFF DUNHAM TRUST DATED MARCH 24, 2010,<br><br>       Plaintiff,<br><br>    v.<br><br>RAYMOND LEI, an individual; OOSHIRTS, INC., d/b/a TEECHIP and TEECHILI; and DOES 1-50,<br><br>       Defendants. | CASE NO.:  2:20-CV-03716-DMG-MAA<br><br>[Judge: Hon. Dolly M. Gee]<br>[Magistrate Judge: Hon. Maria Audero]<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS RAYMOND LEI AND OOSHIRTS, INC.'S MOTION TO DISMISS [FRCP 12(b)(6)]**<br><br>Hearing Date:    September 4, 2020<br>Time:          9:30 a.m.<br>Courtroom:     8C<br><br>Complaint filed: April 23, 2020 |

Plaintiff Jeff Dunham, as an individual and in his capacity as Trustee of the Jeff Dunham Trust Dated March 24, 2010 ("Dunham"), hereby submits his Opposition to Defendants' Raymond Lei ("Lei") and Ooshirts, Inc.'s ("OoShirts") (collectively, "Defendants") Motion to Dismiss.

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ..................................................................................... 1

II.   DEFENDANTS' MOTION SHOULD BE DENIED FOR THEIR
      ABJECT FAILURE TO MEET AND CONFER PURSUANT TO
      LOCAL RULE 7-3. .............................................................................. 3

III.  LEGAL STANDARD .......................................................................... 4

IV.   DEFENDANTS INDISPUTABLY ARE ON NOTICE OF THE CLAIMS
      AGAINST THEM PURSUANT TO FRCP RULE 8. ............................ 5

V.    DUNHAM HAS ADEQUATELY ALLEGED ALTER-EGO
      LIABILITY ........................................................................................ 7

VI.   CLAIM NO. 1: DUNHAM ADEQUATELY PLEADS A CLAIM FOR
      COPYRIGHT INFRINGEMENT. ....................................................... 9

VII.  CLAIMS 2 & 4: DUNHAM'S CLAIMS FOR DIRECT TRADEMARK
      INFRINGEMENT ADEQUATELY ALLEGE CONFUSION AS TO
      ORIGIN. ............................................................................................ 11

VIII. CLAIM NOS. 6-9: DUNHAM'S SECONDARY INFRINGEMENT
      CLAIMS ARE WELL PLED. ............................................................. 13

      A.    Dunham Has Adequately Alleged Infringement By Third Parties. .............. 13

      B.    Dunham Has Pled Actual and Constructive Knowledge of
            Copyright and Trademark Infringement In Support of His Claim for
            Contributory Infringement. .................................................... 14

      C.    Dunham Has Alleged Defendants' Right and Ability to Control For
            Purposes of Asserting a Claim for Vicarious Copyright
            Infringement. .......................................................................... 17

      D.    Dunham Has Adequately Alleged a Claim for Vicarious Trademark
            Infringement. .......................................................................... 18

i

IX.     CLAIM NO. 3: DUNHAM'S CLAIM FOR TRADEMARK DILUTION
        IS ADEQUATELY PLED.............................................................................19

X.      CLAIM NO. 5: DUNHAM'S UCL CLAIM IS NOT PREEMPTED BY
        THE COPYRIGHT ACT.............................................................................19

XI.     CLAIM NOS. 10-11: DUNHAM'S PUBLICITY RIGHTS CLAIMS ARE
        NOT PREEMPTED BY THE COPYRIGHT ACT. ...................................21

XII.    CLAIM NOS. 5, 10-11: CDA IMMUNITY IS NOT THE PROPER
        SUBJECT OF A MOTION TO DISMISS AND DUNHAM'S STATE
        LAW CLAIMS ARE NOT BARRED BY THE CDA.................................22

XIII.   NO PORTIONS OF DUNHAM'S PRAYER FOR RELIEF SHOULD BE
        STRICKEN.................................................................................................23
        A.      OoShirts Is Not an "Innocent Printer." .........................................23
        B.      Counterfeit Damages Are Proper. ..................................................24

XIV.    CONCLUSION..........................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adobe Sys. v. Blue Source Grp. Inc.*,
   125 F. Supp. 3d 945 (N.D. Cal. 2015) ........................................................ 6, 7, 12, 19

*Arpin v. Santa Clara Valley Trans. Agency*,
   261 F.3d 912 (9th Cir. 2001) ..................................................................... 4

*Atari Interactive, Inc. v. OoShirts, Inc.*,
   Case No. 3:19- CV-00264-WHO (N.D. Cal. 2019) ..................................... 15

*Balistreri v. Pacifica Police Dept.*,
   901 F. 2d 696 (9th Cir. 1990) ..................................................................... 5

*Better Homes Realty, Inc. v. Watmore*,
   2017 WL 1400065 (S.D. Cal. 2017) ........................................................... 7

*Boyer v. Becerra*,
   2018 WL 2041995 (N.D. Cal. 2017) ........................................................... 7

*Cahill v. Liberty Mut. Ins. Co.*,
   80 F.3d 336 (9th Cir. 1996) ........................................................................ 5

*City of Carlsbad v. Shah*,
   850 F. Supp. 2d 1087 (S.D. Cal. 2012) ...................................................... 20

*Co Star v. Loopnet*,
   373 F.3d 544 (4th Cir. 2004) ...................................................................... 10

*Conley v. Gibson*,
   355 U.S. 41 (1957) ...................................................................................... 4

*Evans v. Hewlett-Packard Co.*,
   No. C 13-02477 WHA, 2013 U.S. Dist. LEXIS 115856 (N.D. Cal. Aug. 15, 2013) .. 23

*Federal Reserve Bank of San Francisco v. HK Systems*,
   1997 WL 227955 (N.D. Cal. 1997) ............................................................ 8

*Fleet v. CBS, Inc.*,
   50 Cal. App. 4th 1911 (1996) ..................................................................... 22

iii

*Fonovisa, Inc. v. Cherry Auction, Inc.*,
   76 F.3d 259 (9th Cir 1996) ...................................................................................... 17

*Fonovisa, Inc. v. Napster, Inc.*,
   2002 WL 398676 (N.D. Cal. 2002) ............................................................ 13, 14, 16

*Fox Broad. Co., Inc. v. Dish Network, LLC*,
   747 F.3d 1060 (9th Cir. 2014) ............................................................................. 9, 10

*Garcia v. Aurora Commercial Corp.*,
   2013 WL 12146729 (C.D. Cal. 2013) ......................................................................... 3

*Gauvin v. Trombatore*,
   682 F. Supp. 1067 (N.D. Cal. 1988) ........................................................................... 7

*Graehling v. Village of Lombard III*,
   58 Cal. 3d 295 (7th Cir. 1995) ................................................................................... 5

*Gucci Am., Inc. v. Hall & Assoc.*,
   135 F. Supp. 2d 409 (S.D.N.Y. 2001) ...................................................................... 24

*Hearn v. R. J. Reynolds Tobacco Co.*,
   279 F. Supp. 2d 1096 (D. Az. 2003) ........................................................................... 5

*Hoelck v. OoShirts, Inc. et al*,
   1:18-cv-00062-AT (S.D.N.Y. 2018) ......................................................................... 15

*Hoffman v. Capital Cities/ABC, Inc.*,
   33 F. Supp. 2d 867 (C.D. Cal. 1999)
   (*overruled on other grounds*, 255 F.3d 1180 (9th Cir. 2001)) ................................ 21

*Home Box Office, Inc. v. OoShirts, Inc.*,
   Civ. Action No. 18-CV-4645 (S.D.N.Y 2018) ......................................................... 15

*Jenkins v. McKeithen*,
   395 U.S. 411 (1969) ..................................................................................................... 5

*Lincoln Imports Ltd. v. Weaver Flower Co.*,
   2012 WL 1048531 ....................................................................................................... 8

*Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*,
   591 F.Supp.2d 1098 (N.D. Cal 2008) ....................................................................... 14

*Luvdarts, LLC v. AT&T Mobility, LLC*,
   710 F.3d 1068 (9th Cir. 2013) ................................................................................... 16

iv

*Maloney v. T3Media, Inc.*,
    853 F.3d 1004 (9th Cir. 2017) ...................................................................... 21, 22

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017) .............................................................................. 10

*Perfect 10, Inc. v. Google, Inc.*,
    2008 WL 4217837 (C.D. Cal. 2008) .................................................................. 22

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
    494 F.3d 788 (9th Cir. 2007) .......................................................................... 17, 18

*Parts.com, LLC v. Yahoo! Inc.*,
    996 F. Supp. 2d 933 (S.D. Cal. 2013) ................................................................ 23

*Reiser v. Safeco Ins. Co. of Am.*,
    2012 WL 12878611 (C.D. Cal. 2012) ................................................................... 3

*Sessions v. Chrysler Corp.*,
    517 F.2d 759 (9th Cir. 1975) .............................................................................. 20

*Singer v. Live Nation Worldwide Inc.*,
    2012 WL 123146 (C.D. Ca. 2012) ........................................................................ 3

*Slaven v. BP America, Inc.*,
    786 F. Supp. 853 (C.D. Cal. 1992) ....................................................................... 4

*Steinley v. Health Net, Inc.*,
    2019 WL 3059383 (C.D. Cal. 2019) ..................................................................... 7

*Swift v Zynga Game Network, Inc.*,
    2010 WL 4569889 (N.D. Cal. 2010) ................................................................... 22

*Ticketmaster Corp. v. Tickets.com, Inc.*,
    54 U.S.P.Q.2d 1344 (C.D. Cal. 2000) ................................................................ 20

*Tiffany (NJ) Inc. v. eBay, Inc.*,
    600 F.3d 93 (2d Cir. 2010) ................................................................................. 12

*UMG Recordings, Inc. v. Shelter Capital Partners LLC*,
    718 F.3d 1006 (9th Cir. 2013) ............................................................................ 17

*Ventura Content, Ltd. v. Motherless, Inc.*,
    2013 WL 11237204 (C.D. Cal. 2013) ................................................................. 17

v

*Viacom Int'l, Inc. v. YouTube, Inc.,*
    676 F.3d 19 (2d Cir. 2012) ...................................................................... 15

*Wham-O, Inc. v. Paramount Pictures Corp.,*
    286 F. Supp. 2d 1254 (N.D. Cal. 2003) .................................................. 19

**Statutes**

California Business & Professions Code Section 17200............................ 19, 20

CDA § 230 ................................................................................................ 22

**Other Authorities**

Fed. R. Civ. P. 8(a)......................................................................................... 5

Rule 7-3 ............................................................................................... 1, 3, 4

Rule 8 .................................................................................................. 5, 6, 7

Rule 12(b)(6) ...................................................................................... 4, 5, 22

Thomas McCarthy, 2 *The Rights of Publicity and Privacy* (2d Ed.) § 11:52 ................... 21

# I.  **INTRODUCTION**

The basic facts of this textbook case of copyright and trademark infringement, as alleged in the Complaint, could not be more simple or straightforward. Plaintiff Jeff Dunham ("Dunham") is one of the most popular and successful ventriloquists and stand-up comedians in the world, whose success has been due in part to the inherently distinctive characters that he created, uses in his performances, and uses to market and sell merchandise. Defendant Raymond Lei ("Lei") owns and manages a number of companies, including Defendant OoShirts, Inc. ("OoShirts"), which operate online platforms that offer apparel and other consumer products for sale. Dunham alleges that Lei and OoShirts (the only two identified defendants in this lawsuit), have marketed, created, manufactured, distributed, and sold counterfeit consumer products to the public that, *inter alia*, infringe Dunham's copyrights and trademarks and misappropriate his right of publicity. There is no question that Defendants OoShirts and Lei are on notice of the claims against them.

In the face of these straightforward and damning allegations, Defendants have thrown the proverbial kitchen sink at the Complaint through a meritless motion to dismiss ("MTD"), in which they misrepresent the facts and the law, misrepresent and omit material allegations, and attempt to try this case on the merits at the pleading stage.

As a preliminary matter, using a tactic that reflects the gamesmanship and "smoke and mirrors" that permeates the MTD, Defendants represent to this Court (as they must) that they met and conferred with Dunham's counsel prior to filing the MTD in compliance with Local Rule 7-3. But to be clear, *this did not happen*. While counsel for the parties did speak about this case, it was to discuss Dunham's discovery of additional infringing products on Defendants' websites and Defendants' commitment to provide additional information about the infringing conduct. Defendants never even raised the topic of their anticipated response to the Complaint, let alone fully discuss the purported defects in the Complaint. Not only have Defendants failed to comply with Local Rule 7-3, but they misrepresented to this Court that they had. Pursuant to well-settled Ninth

Circuit authority, this alone is sufficient ground to deny the MTD in its entirety and award Dunham his legal fees in defending against this meritless motion.

Defendants fare no better when it comes to the merits of the MTD. As discussed herein, Defendants repeatedly acknowledge (as they must) that Dunham alleges all of the essential elements of each cause of action, but instead, complain that Dunham doesn't allege enough *additional facts* to support his claims. In doing so, Defendants (i) purposefully omit material allegations, (ii) rely almost entirely on (dozens of) inapposite cases that were decided on summary judgment or post-judgment, and which concern the sufficiency of the evidence presented (and not of the allegations in the pleadings); and (iii) ask this Court to consider facts beyond the pleadings. *See, e.g.*, Defendants' citations to, and reliance on, an alleged "Terms of Use" policy and alleged "screening methods" (MTD at p.9:25-10:21), which were not referenced in, nor attached as an exhibit to, the Complaint. Defendants will have the opportunity to present evidence in support of their denial and defenses; this is not that time.

Finally, it is now evident that Defendants' principal defense will be the meritless argument that they are a passive internet service provider that innocently allows third parties to upload images, and that they have no involvement in the process of creating and/or profiting off of the infringement of Dunham's intellectual property. To be perfectly clear at the outset of this case, this is a complete fiction. As alleged in the Complaint, regardless of who uploads the infringing images to Defendants' websites (whether Defendants or third parties), Defendants actually manufacture the products that are sold (putting the infringing images on the products), advertise and promote them (using Dunham's likeness), sell them, and make a profit off of the infringement. Unlike E-Bay and Amazon, Defendants are directly and materially engaged in the process of *creating* infringing products. Defendants are unabashedly in the business of knowingly profiting off of the protected works, names, and likenesses of others, including Dunham. Indeed, Defendants are no strangers to the courtroom – numerous plaintiffs have filed identical claims against Defendants for the exact same conduct.  Finally, Defendants

2

1   attempt to mislead this Court into thinking that Dunham's claims for the misappropriation

2   of his publicity rights are preempted by the Copyright Act, when the reality is that these

3   claims are based on Defendants' use of Dunham's name, image, and likeness in their

4   *advertising* and marketing of the Infringing Products, and not in the products themselves.

5          For the reasons set forth herein Dunham respectfully requests that this Court deny

6   Defendants' MTD in its entirety. Alternatively, should this Court permit Defendants'

7   MTD to be heard despite their complete failure to meet and confer, and should this Court

8   grant Defendants' Motion to Dismiss as to any claim, Dunham respectfully requests leave

9   to amend his Complaint accordingly.

10  **II.    DEFENDANTS' MOTION SHOULD BE DENIED FOR THEIR ABJECT**

11         **FAILURE TO MEET AND CONFER PURSUANT TO LOCAL RULE 7-3.**

12         Defendants failed to meet and confer (or even *attempt* to do so) pursuant to Local

13  Rule 7-3 and this Court's Initial Standing Order ¶ 4(b), an error fatal to Defendants'

14  Motion to Dismiss. The meet and confer requirement of Local Rule 7-3 is clear: "Counsel

15  contemplating the filing of any motion **shall** first contact opposing counsel **to discuss**

16  **thoroughly**, preferably in person, **the substance of the contemplated motion** and any

17  potential resolution. The conference shall take place at least seven (7) days prior to the

18  filing of the motion…." (Emphasis Added).

19         Federal law is clear, and the Ninth Circuit is in accord, that failure to comply with

20  Local Rule 7-3 is a sufficient and independent ground for denying a Motion to Dismiss.

21  "The Court emphasizes that the meet and confer requirement is not an arbitrary or

22  superfluous rule. Local Rule 7-3 helps to conserve judicial resources by eliminating

23  issues that need not be considered by the Court. The rule is of such importance that a

24  district court may even deny party's motion for failing to comply with its requirements."

25  *Garcia v. Aurora Commercial Corp.*, 2013 WL 12146729, *1 (C.D. Cal. 2013); *See also*

26  *Singer v. Live Nation Worldwide Inc.*, 2012 WL 123146 (C.D. Ca. 2012) (denying

27  a motion for summary judgment even where the moving party met and conferred three

28  days prior to filing the motion, in violation of Local Rule 7–3); *Reiser v. Safeco Ins. Co.*

3

*of Am.*, 2012 WL 12878611, *1 (C.D. Cal. 2012) (denying a motion to dismiss for failing to meet and confer pursuant to Local Rule 7-3).

Defendants represent to this Court in their Notice that "[p]ursuant to Local Rule 7-3, this Motion is made following the conference of counsel, which took place on June 15, 2020." While counsel for the parties did discuss this matter on June 15th, the conversation concerned Dunham's discovery of hundreds of post-Complaint infringing products on Defendants' websites, and Defendants' representation that they would provide additional information pertaining to the alleged infringement occurring on Defendants' websites. *See* Declaration of T. Wayne Harman ("Harman Decl."), ¶2-4. At *no point* during that (or any other) conversation did the parties' counsel discuss any purported deficiencies with the Complaint or the fact that Defendants intended to file a motion to dismiss. *Id.* **Defendants' citation to Local Rule 7-3 is a representation that the parties met and conferred about the MTD, which did not happen, period**.

Accordingly, Defendants' Motion suffers from the fatal defect of failing to participate in good faith in a meet and confer with opposing counsel. In according with Ninth Circuit authority, the Motion to Dismiss should be denied on this basis alone.

## III.   <u>LEGAL STANDARD</u>

The sole purpose of a Rule 12(b)(6) motion to dismiss is to test the legal sufficiency of the claims asserted in a complaint. *Conley v. Gibson*, 355 U.S. 41, 45–46 (1957) ("a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief"); *see also Slaven v. BP America, Inc.*, 786 F. Supp. 853, 857 (C.D. Cal. 1992). The fundamental purpose of a 12(b)(6) motion is to challenge defects which appear on the face of the complaint. The court cannot consider material outside of the complaint such as factual allegations, declarations or other extraneous materials. *Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

In resolving a Rule 12(b)(6) motion, the court must (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as

4

true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996); *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969) ("For the purposes of a motion to dismiss . . . the complaint is to be liberally construed in favor of plaintiff"). The federal rules require only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

"A suit should not be dismissed if it is possible to hypothesize facts, consistent with the complaint, that would make out a claim." *Hearn v. R. J. Reynolds Tobacco Co.*, 279 F. Supp. 2d 1096, 1101 (D. Az. 2003). Put another way, dismissal under Rule 12(b)(6) is proper only where there is a "lack of a cognizable legal theory" or the "absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept.*, 901 F. 2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard III*, 58 Cal. 3d 295, 297 (7th Cir. 1995).

## IV.   DEFENDANTS INDISPUTABLY ARE ON NOTICE OF THE CLAIMS AGAINST THEM PURSUANT TO FRCP RULE 8.

Defendants contend that by defining the term "Defendants" in the Complaint to include OoShirts, Lei, and Does 1-50, Defendants OoShirts and Lei are unsure of the nature of claims against them, and thus, that the Complaint fails to comply with Federal Rule of Civil Procedure Rule 8 ("Rule 8") (which requires only a "short and plain statement of the claim showing that the pleader is entitled to relief"). This is unsupported by the allegations in the Complaint and the law.

Dunham makes patently clear throughout the Complaint of the roles that OoShirts and Lei are alleged to play in Defendants' unlawful scheme. For example, Dunham has alleged that OoShirts (which is owned, controlled, and operated by Lei) is doing business as a number of websites that promote, advertise, create, manufacture, distribute, and sell products that infringe Dunham's intellectual property. *See, e.g.*, Compl. ¶¶ 1-4, 6, 7, 11-15, 32-39, Exs. A-D. While Defendants disingenuously refer to the "52 defendants in the case," they fail to point out that there are only *two* identified defendants: OoShirts and

Lei. Dunham included Does 1-50 as additional defendants in light of his belief that there are other individuals, companies, and websites that are partnered, owned, operated, or otherwise affiliated with OoShirts and Lei and also responsible for the campaign of wrongful acts alleged in the Complaint.[1]

Rule 8 is simple and straightforward, requiring that "[a] pleading that states a claim for relief must contain…a short and plain statement of the claim showing that the pleader is entitled to relief." A plaintiff's allegations must "provide sufficient notice to all of the Defendants as to the nature of the claims being asserted against them, including "what conduct is at issue." *Adobe Sys. v. Blue Source Grp. Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015) (denying motion to dismiss complaint).  To support their argument that Dunham has not met this liberal standard, Defendants rely on a handful of inapposite cases that actually *refute* Defendants' arguments. For example, Defendants rely on *Adobe Systems*, but the court in that case expressly *rejected* the defendant's argument that it was impermissible to combine multiple defendants together in allegations against the "defendants."  *Id.* at 965. Critically, the court stated that although the plaintiff does "make infringement claims against 'Defendants' generally, Plaintiff "define[d] the term 'defendants' to be inclusive" of all defendants." *Id.* "Put another way, the gravamen of [Plaintiff's] allegations in the instant lawsuit are that all the Defendants infringed on [Plaintiff's] trademarks and copyrights…The Court finds that such allegations provide

---

[1] For example, and as expressly alleged in the Complaint, Defendants are in the business of operating numerous online e-commerce platforms, that include, ***without limitation***, the websites www.teechip.com and www.teechili.com and maintain business addresses in California, Indiana, and Pennsylvania, owning their own printing facilities and shipping to over two hundred countries. Compl. ¶¶32, 34. Upon information and belief, the number of websites operated by Lei or his yet-to-be-revealed business entities number in the dozens, and the inclusion of Doe Defendants preserves Dunham's claims against such unknown entities (among others).

sufficient notice." *Id.*[2]  Here, in addition to alleging Defendants OoShirts and Lei's specific roles in their tortious scheme, Dunham also asserts claims against the "Defendants," which include OoShirts, Lei, and Does 1-50 (*see* Compl. ¶ 12), and which courts have found does not run afoul of Rule 8.

Unsurprisingly, given the liberality of Rule 8, the other cases relied upon by Defendants are similarly unhelpful to their argument. In *Gauvin v. Trombatore*, 682 F. Supp. 1067 (N.D. Cal. 1988) and *Boyer v. Becerra*, 2018 WL 2041995 (N.D. Cal. 2017), the courts found that the assertion of claims against multiple identified defendants (43 in the *Boyer* case) failed to satisfy Rule 8 given that there were complicated issues of state action and immunity from civil action that would affect certain defendants' liability as a threshold matter. That is not the case here, and Dunham has put both named Defendants on notice of the charged conduct in more than a single allegation that describes their roles and bases for liability. In *Better Homes Realty, Inc. v. Watmore*, 2017 WL 1400065 (S.D. Cal. 2017), the court found that when alleging claims against two specifically named individuals and a corporation, the plaintiff "[did] not allege that [the individual defendants] were or are agents of [the corporation]," or what the relationship was between the individual and corporate defendants.  *Id*. at *9, 11. Here, to the contrary, Dunham expressly alleged that Defendant Lei was an agent of OoShirts, that "Defendant Lei directly owned controlled, dominated, used, managed and/or operated OoShirts, www.teechip.com, and www.teechili.com," and that OoShirts was the alter ego of Lei. *See* Compl. ¶¶ 11-15. For the foregoing reasons, the Motion to Dismiss should be denied.

## V.   <u>DUNHAM HAS ADEQUATELY ALLEGED ALTER-EGO LIABILITY</u>.

To invoke the alter ego doctrine, Dunham must allege: (1) that there is such a unity of interest and ownership that the separate personalities of the two corporations no longer exist; and (2) that if the acts are treated as those of only one of the corporations, an

---

[2] *See also Steinley v. Health Net, Inc.*, 2019 WL 3059383,*4-5 (C.D. Cal. 2019) (denying motion to dismiss complaint, finding that the non-attribution of specific acts to specific defendants was not improper or a sufficient basis to dismiss the complaint).

inequitable result will follow. *See Lincoln Imports Ltd. v. Weaver Flower Co.*, 2012 WL 1048531 at *4-5 (<u>denying motion to dismiss</u> alter ego allegations in cross-complaint where defendants (in two allegations) pled the basic elements supporting alter ego liability); *see also Federal Reserve Bank of San Francisco v. HK Systems*, 1997 WL 227955 at *6 (N.D. Cal. 1997) (<u>denying motion to dismiss</u> alter ego allegations *in complaint* where plaintiff [like Dunham] pled that the individual defendant controlled and dominated the corporate defendant and that they disregarded corporate form).

Here, Dunham has adequately alleged that Defendant Lei is the alter-ego of Defendant OoShirts, contending, *inter alia*, that Lei "and the applicable Doe Defendants at all times relevant hereto directly owned, controlled, dominated, used, managed and operated OoShirts, Inc.," that "OoShirts, Inc. failed to follow corporate formalities and maintain a corporate identity separate and distinct from Lei and the applicable Doe Defendants," and that "OoShirts, Inc. has been a business conduit and alter ego of Lei and the applicable Doe Defendants." Compl. ¶ 14.

Moreover, at the pleading stage, Dunham is not required to proffer evidence of alter-ego liability, especially where such evidence is almost entirely within the possession, custody, or control of the Defendants and not available to Dunham except through discovery. Notably, the three key cases relied upon by Defendants were decided at the summary judgment and post-judgment stage; *none were before the courts on a motion to dismiss*.

Finally, Defendants contend that if Dunham has not properly alleged alter ego liability as to Lei (which he has), that all claims against Lei must be dismissed. However, alter ego is not the only alleged basis for Lei's liability. For example, Dunham alleges that each of the Defendants (including Lei) authorized and/or ratified the conduct of the other Defendants, including OoShirts (Compl. ¶ 13), that each of the Defendants is liable as an aider and abettor of the wrongful acts alleged in the Complaint (Compl. ¶ 15), and that, upon information and belief, each of the Defendants engaged in the wrongful

1    conduct alleged in the Complaint. [3] *See, e.g.*, Dunham's claim for vicarious copyright

2    infringement (Compl. ¶¶ 99-103), in which it is alleged that the Defendants (including

3    Lei, OoShirts' owner and CEO) have the right to monitor, limit, and/or stop the

4    infringement, and the right to remove the infringing products. For the foregoing reasons,

5    Defendants' Motion to Dismiss all claims against Lei should be denied.

6    ## VI.   CLAIM NO. 1: DUNHAM ADEQUATELY PLEADS A CLAIM FOR

7    ## COPYRIGHT INFRINGEMENT.

8         Defendants falsely assert that Dunham is required to allege as an element of the

9    claim that Defendants OoShirts and/or Lei are "the most significant cause" of the copy,

10   and that Dunham has failed to so. As a preliminary matter, there is no requirement under

11   the law that a Plaintiff allege (or prove) that a defendant is the "most significant cause" of

12   the copying that forms the basis of the copyright claim, and Defendants cite to no cases

13   establishing or even suggesting the contrary. The principal case relied on by Defendants,

14   *Fox Broad. Co., Inc. v. Dish Network, LLC,* 747 F.3d 1060 (9th Cir. 2014), does not stand

15   for that proposition. To the contrary, the 9th Circuit stated that "to establish a claim of

16   copyright infringement by reproduction, the plaintiff must show ownership of the

17   copyright *and copying by the defendant*." *Id*. at 1066-1067 (emphasis added). While the

18   court noted (on a motion for preliminary injunction) that a third party was "the most

19   significant cause of the copy," it did not hold that this was the standard; the court merely

20   held that, based on the evidence presented, the plaintiff had failed to demonstrate that the

21

22

---

23   [3] *Cf.* the holdings of the cases relied upon by Defendants, which they intentionally

24   misrepresent. For example, Defendants purport to quote from *Balsam v. Trancos, Inc.*,

     203 Cal. App. 4th 1083, 1109 (2012) for the proposition that"[d]irectors or officers of a

25   corporation do not incur personal liability for torts of the corporation merely by reason of

26   their official position." However, that is not the end of the sentence. The quote goes on to

     say "*unless they participate in the wrong or authorize or direct that it be done*. They may

27   be liable, under the rules of tort and agency, for tortious acts committed on behalf of the

28   corporation." *Id*. Here, that is one of the bases of Lei's liability as alleged in the

     Complaint.

defendant "made a copy." *Id*. at 1067.[4] For this reason alone, Defendants' Motion to Dismiss the First Claim for Relief should be denied.

In any event, Defendants' contention that they did not participate in the copying of Dunham's copyrighted works and/or that OoShirts is a mere passive conduit for infringement, akin to an internet service or cable provider, is belied by the allegations of the Complaint. Unlike the defendant in *Co Star,* which was described as being similar to a "copy machine", the Complaint is replete with allegations that OoShirts and Lei (its owner, operator, and alter ego) have an active and material role in, and/or are the direct cause of, the copying, infringement, and other wrongful acts alleged in the Complaint.

For example, Dunham alleges that Defendants OoShirts and Lei are marketing, advertising, promoting, ***creating, manufacturing,*** selling, and profiting off of consumer products, including COVID-19 face masks and t-shirts…" that infringe Dunham's trademarks and copyrights (*see, e.g.*, Compl. ¶¶ 2, 33-42, 45); in particular, see Compl. ¶33 ("once a visitor to one of the Infringing Websites places an order for a product, *Defendants manufacture the product*, ship it to the customer, process the payment, and retain profits from the sale"). Further, the www.teechili.com website (which, upon information and belief, is run and managed by www.teechip.com), ***actually has an entire section of its site devoted to "Jeff Dunham" products***, which is found under the header 'Jeff Dunham.'" *Id.*, ¶40 (emphasis added). Unless and until Ebay starts copying infringing images onto counterfeit products that it then sells to consumers, OoShirts and

---

[4] Notably, the only three cases cited by Defendants, including *Fox Broad. Co., Inc.,* 747 F.3d at 1060, *Co Star v. Loopnet*, 373 F.3d 544 (4th Cir. 2004), and *Perfect 10, Inc. v. Giganews, Inc*., 847 F.3d 657, 666 (9th Cir. 2017), addressed only whether the plaintiff had *presented sufficient evidence in support of its claims* on a motion for preliminary injunction and/or motion for summary judgment. The courts in all three cases did not address the sufficiency of allegations in a complaint, which is a completely different and less stringent standard.

Ebay are nothing alike.[5]  Dunham's claim for Copyright Infringement is well-pled, and Defendants' Motion to Dismiss the First Claim for Relief should be denied.

## VII.   CLAIMS 2 & 4: DUNHAM'S CLAIMS FOR DIRECT TRADEMARK INFRINGEMENT ADEQUATELY ALLEGE CONFUSION AS TO ORIGIN.

Defendants' contention that Dunham has failed to allege confusion as to origin is again belied by the allegations in the Complaint.  For example, Dunham alleges that:

- "Ripping off and exploiting the intellectual property of third parties, and ***duping customers into believing that they are purchasing legitimate merchandise*** when they're actually getting counterfeits, is, upon information and belief, Defendants' *business model.*" Compl. ¶4 (emphasis added);

- "*Such use falsely implies and was obviously intended to cause potential consumers to mistakenly believe that Dunham has endorsed and is affiliated with Defendants*, when, in fact, he has not and is not." *Id.*, ¶38 (emphasis added);

- "[Defendants' conduct] has led fans of the Plaintiff to ask him whether he was improperly trying to profit off of the COVID-19 pandemic by selling these COVID-19 products. This confusion has caused, and continues to cause, great harm to Plaintiff's reputation and brand." *Id*. ¶2.

- "Through their above-described actions, Defendants have used and continue to use in commerce a reproduction or copy of the Dunham Trade Dress and the Dunham Trademarks and/or colorable imitations thereof that are confusingly similar to those marks in connection with the sale, offering for sale, distribution, or advertising of goods, which use is ***likely to cause consumer confusion, or to cause mistake, or to deceive***." *Id.*, ¶57 (emphasis added); *see also* Compl. ¶ 77.

---

[5] While Dunham does allege that third parties *also* uploaded infringing images to the websites owned and operated by OoShirts and Lei, Defendants purposefully ignore Dunham's allegations concerning the direct and material role OoShirts and Lei have played in the infringement of Dunham's intellectual property.

Given that Dunham indisputably has satisfied the pleading standard for these claims, Defendants attempt to turn this into a motion for summary judgment, claiming that Dunham "fails to plead any facts in support" of these allegations and citing only to two cases that both concerned *post-judgment motions* (after all the evidence had been presented in the cases). In fact, in *Adobe Systems*, 125 F. Supp. 3d at 966-967 (*cited by Defendants* for a different proposition), the court *denied a motion to dismiss* a claim for trademark infringement where the plaintiff pled that defendants used plaintiff's trademarks in connection with the sale of counterfeit products and that such use was likely to confuse customers about the origin of the products.

Even if Defendants' cases were on point (they are not) and concerned the adequacy of a pleading (they do not), Dunham's allegations are entirely consistent with their holdings. For example, in *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93 (2d Cir. 2010) (which concerned a post-judgment motion), a popular jewelry brand brought suit against eBay for displaying counterfeit Tiffany brand products on its website. Tiffany claimed eBay had directly infringed its mark by using it on eBay's website. Unlike the Defendants here, who sell *only* counterfeit Dunham products, the defendants in eBay also permitted users to sell legitimate Tiffany products. The court held that trademark law "does not prevent one who trades a branded product from accurately describing it by its brand name, ***so long as the trader does not create confusion by implying an affiliation with the owner of the product***." *Id.* at 103 (emphasis added).

Here, unlike in eBay, Defendants are alleged to advertise, promote, *and manufacture* the infringing products themselves, and are alleged to have created confusion by implying such affiliation with Dunham directly on the Infringing Websites. *See, e.g.*, Compl. ¶38 ("Dunham's name, photograph, image and/or likeness have been used without his authorization to attract and captivate the attention of consumers in connection with the promotion of the Infringing Products. Such use falsely implies and was obviously intended to cause potential consumers to mistakenly believe that Dunham has endorsed and is affiliated with Defendants, when, in fact, he has not and is not."); *Id.*,

¶7 ("Defendants have even cropped photographs of Dunham's face onto other individuals in order to sell their counterfeited products."). For the foregoing reasons, the Motion to Dismiss the Second and Fourth Claims for Relief should be denied.

## VIII.  CLAIM NOS. 6-9: DUNHAM'S SECONDARY INFRINGEMENT CLAIMS ARE WELL PLED.

### A.   Dunham Has Adequately Alleged Infringement By Third Parties.

After contending that Dunham failed to allege infringement by OoShirts and Lei because Dunham also alleged direct infringement by third parties (*see, e.g.*, MTD at 17:6-14), Defendants then make the directly contradictory argument that Dunham failed to state a claim for secondary infringement by not alleging direct infringement by third parties! Defendants' mental gymnastics aside, Dunham has alleged infringement by third parties sufficient to support his claims for secondary infringement, which allegations include, but are not limited to, the following:

- "Defendants directly benefit financially from ***the infringing activity of third parties who design and upload infringing designs to the Infringing Websites***. Upon information and belief, Defendants get paid a percentage of every sale of every product displayed on the Infringing Websites." Complaint, ¶100 (emphasis added).

- "Defendants, and each of them, and the third parties who are in an actual and/or apparent partnership, have the authority to bind one another in transactions with third parties, and/or exercise joint control or ownership over the Infringing Products. Defendants are thus vicariously liable for the trademark and trade dress ***infringement of the third parties who design and upload infringing and counterfeit designs onto the Infringing Websites***." *Id.*, ¶105 (emphasis added).

Defendants' reliance on *Fonovisa, Inc. v. Napster, Inc.*, 2002 WL 398676 (N.D. Cal. 2002) is misplaced. There, the court *denied the defendant's motion to dismiss the claim for secondary infringement*, finding that the allegation that Napster's users "directly infringe plaintiff's copyrighted sound recordings by uploading and downloading

copies of these recordings through Napster's system" was sufficient to satisfy the element of direct infringement by third parties. *Id*. at *13-14. Here, Dunham alleges that third parties were directly infringing his intellectual property by, among other things, uploading infringing images through Defendants' Infringing Websites. *See* Compl. ¶ 100.

Similarly, Defendants' reliance on *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F.Supp.2d 1098, 1104 (N.D. Cal 2008), is also misplaced. There, the plaintiff sued an alleged internet service provider for vicarious and contributory copyright and trademark infringement based on the fact that the defendant's website sold goods that infringed the plaintiff's copyrights and trademarks (the plaintiff did not also sue the direct third party infringers). The court *denied* the defendants' *motion for summary judgment*, finding that (with regard to the element of direct infringement by third parties) a reasonable jury could find that third parties had infringed plaintiff's copyrights and trademarks based on the evidence that infringing products were sold on the defendants' websites. *Id*. at 1105.   For these reasons, Defendants' Motion to Dismiss Counts Six through Nine should be denied.

**B.**     **Dunham Has Pled Actual and Constructive Knowledge of Copyright and Trademark Infringement In Support of His Claim for Contributory Infringement.**

Defendants contend (in Sections II.G.2 and 4) that, for purposes of alleging contributory copyright and trademark infringement, Dunham failed to plead that Defendants had knowledge of direct infringement by third parties.  While this is consistent with Defendants' meritless argument (based on claims outside of the pleadings) that Defendants operate an innocent and passive internet service provider, it is directly at odds with the well-pled allegations of the Complaint, which are willfully ignored and misrepresented by Defendants, and which allege that Defendants have specific knowledge of third party infringement, directly participate in (and facilitate) that infringement, and/or are willfully blind to their infringement. For example, Dunham alleges the following:

- "Defendants have been engaging in this same conduct for years, which can be equated to a game of 'whack-a-mole': i) Dunham identifies infringing products on Defendants' websites and sends a DMCA Notice demanding that they be taken down, (ii) Defendants take down the infringing products, and (iii) Defendants then put up for sale new infringing products, and continue to misappropriate Dunham's name, photograph, image and likeness to sell those products, starting the process all over again." Compl. ¶3;

- "Defendants have even set up a *separate section of one of their websites* for all of their Jeff Dunham related-products. Upon information and belief, Defendants have even cropped photographs of Dunham's face onto other individuals in order to sell their counterfeited products." *Id.*, ¶7;

- "Defendants' infringement is ***knowing and willful***, as evidenced by (a) the sheer quantity of different counterfeit designs and Infringing Products being sold by Defendants, (b) the exact duplication of a variety of iconic Dunham designs, and (c) Defendants' pattern and practice of infringing upon the intellectual property rights of well-known brands. For example, OoShirts has been sued multiple times for the same type of infringing conduct. *See, e.g., Home Box Office, Inc. v. OoShirts, Inc.,* Civ. Action No. 18-CV-4645 (S.D.N.Y 2018); *Atari Interactive, Inc. v. OoShirts, Inc.,* Case No. 3:19-CV-00264-WHO (N.D. Cal. 2019); *Hoelck v. OoShirts, Inc. et al,* 1:18-cv-00062-AT (S.D.N.Y. 2018)." *Id.*, ¶39 (emphasis added); *see also* Compl. ¶¶ 4, 40, 90, 95.

Moreover, Dunham has sufficiently alleged Defendants' "willful blindness" to the infringement. A person is 'willfully blind' . . . amounting to knowledge where the person 'was aware of a high probability of the fact in dispute and consciously avoided confirming that fact.'" *Viacom Int'l, Inc. v. YouTube, Inc.,* 676 F.3d 19, 35 (2d Cir. 2012). Defendants claim that they did not "consciously avoid" discovery of the infringement, as evidenced by Dunham's alleged "concession" that Defendants took down infringing material after receiving DMCA notices from Dunham, citing to Compl. ¶ 90. *See* MTD at 21:19-21, 23:24-24:24. However, Defendants conveniently misstated the entire allegation, which states that after being removed, "the *same* and new infringing

15

products have been *put back up* on the Infringing Websites, in what amounts to a never ending game of "whack-a-mole." Compl. ¶90 (emphasis added). At worst, that is direct knowledge of infringement; at best, it constitutes willful blindness. Defendants also assert (without authority) that Dunham's allegation that "multiple" DMCA notices were sent to Defendants is somehow insufficient to support a claim of willful blindness, but this is a disputed issue not to be resolved on a motion to dismiss.

The cases relied upon by Defendants are inapposite. In *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072-73 (9th Cir. 2013), the court dismissed plaintiff's claims against AT&T for contributory infringement because the plaintiff (unsurprisingly) could not adequately allege that a wireless carrier (AT&T) had knowledge of what its customers were sharing over the wireless network. *Id*. Similarly, in *A&M Records, Inc. v. Napster*, Inc., 239 F.3d 1004, 1021 (9th Cir. 2001), the 9th Circuit *upheld* the District Court's granting of a preliminary injunction *finding a likelihood of success on the merits of plaintiff's claim for contributory infringement.* There, the court found that "Napster has actual knowledge that specific infringing material is available using its system, that it could block access to the system by supplied of the infringing material, and that it failed to remove the material." *Id*. at 1021-22. As described above, Dunham's allegations that Defendants had knowledge of the infringement occurring on the Infringing Websites goes far beyond simply alleging that Defendants own and operate a network on which infringement "happens to occur."

Defendants also contend that Dunham failed to adequately plead that Defendants had "actual or constructive" knowledge of the infringing activity of third parties for purposes of pleading contributory trademark infringement. As set forth above, the fiction that Defendants were ignorant of the infringing activities of third parties is belied by the allegations of the Complaint. Further, Dunham can state a viable claim by alleging that Defendants had "direct control and monitoring of the instrumentality used by a third party to infringe [Dunham's trademarks]," which is exactly what Dunham alleges here: that Defendants had control and monitoring over their websites, which Defendants and

16

third parties used to sell infringing products. *See* Compl. ¶ 32-42; *cf.  Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007) (cited by Defendants), in which the 9th Circuit found that the plaintiff had failed to allege a claim for contributory trademark infringement where the Defendants' credit card payment network was *not* the instrumentality used to commit the infringement; the court found that the infringement could have occurred without the use of the defendant's network. It is undisputed that this is not the case here and that the infringement is *dependent* on Defendants' Infringing Websites. For the foregoing reasons, Defendants' Motion to Dismiss Counts Six and Seven of the Complaint should be denied.

    **C.**    **Dunham Has Alleged Defendants' Right and Ability to Control For Purposes of Asserting a Claim for Vicarious Copyright Infringement.**

Defendants' argument that Dunham has not adequately pled that Defendants have the right and ability to supervise the infringing conduct of third parties on Defendants' own website(s) once again ignores the well-pled allegations of the Complaint and applicable law. *See, e.g.,* Compl. ¶101; *see also Fonovisa, Inc. v. Cherry Auction, Inc.,* 76 F.3d 259, 262-63 (9th Cir 1996) (*cited by Defendants*, and reversing District Court's granting of motion to dismiss claim for vicarious copyright infringement, finding that the defendant controlled the location of the infringement, promoted that location, and had the right to remove the infringers from the location). The same is true here.

Instead, Defendants' argument is entirely reliant on their fictional, "beyond-the-pleadings" argument that OoShirts (and Lei's other infringing websites) are innocent and passive internet service providers. *See, e.g.*, MTD at 22:5-13 (comparing OoShirts to Ebay). This is an unsupported falsehood, and consequently, their reliance on *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1029 (9th Cir. 2013) and *Ventura Content, Ltd. v. Motherless, Inc.*, 2013 WL 11237204 at *39-41 (C.D. Cal. 2013) is misplaced. Both cases concern photo-sharing websites in which third parties merely upload photographs for public viewing. As explained above, Defendants are not a mere photo sharing or internet database service. Defendants are alleged to play a direct

role in the infringement, advertising, promoting, creating, manufacturing, and distributing the infringing products themselves, leaving the right and ability to control the infringement squarely in Defendants' hands. *See, e.g.,* Compl. ¶¶32-42, 95 (alleging that (unlike Ebay and Amazon) Defendants manufacture the infringing products that are sold on their Infringing Websites). For the foregoing reasons, Defendants' Motion to Dismiss the Eighth Claim for Vicarious Copyright Infringement should be denied.

### D.   Dunham Has Adequately Alleged a Claim for Vicarious Trademark Infringement.

Defendants contend that Dunham fails to adequately allege that the Defendants and the third party infringers have an actual or apparent partnership, and as a result, that Dunham's claim for vicarious trademark infringement *must necessarily fail*. While Dunham does adequately plead the existence of an apparent or actual partnership (*see* Compl. ¶105), his claim for vicarious liability would not fail even if he had not, given that this is only *one* of three independent grounds for establishing liability for vicarious trademark infringement. *See Perfect 10, Inc. v. Visa Int'. Service Ass'n*, 494 F.3d at 807 (cited by Defendants) ("Vicarious liability for trademark infringement requires 'a finding that the defendant and the infringer have an apparent or actual partnership, have authority to bind one another in transactions with third parties **or** exercise joint ownership or control over the infringing product'") (emphasis added).

Defendants do not contend that Dunham fails to allege that Defendants and the infringing third parties "exercise joint ownership or control over the infringing product," for example, and for good reason: they *do*, and Dunham alleges that they do in the Complaint. For example, Dunham alleges that Defendants "exercise joint control or ownership over the Infringing Products (Compl. ¶ 105), that third parties "design and upload infringing and counterfeiting designs onto the Infringing Websites," (Compl. ¶ 105), that Defendants manufacture the products incorporating those infringing images (Compl. ¶ 33), and that Defendants, "create and distribute" products with the infringing designs that are uploaded by third parties (Compl. ¶ 95). Therefore, it is indisputable that

18

1    Dunham has adequately alleged a claim for vicarious trademark infringement, and

2    Defendants' Motion to Dismiss the Ninth Claim for Relief should be denied.

3    **IX.    CLAIM NO. 3: DUNHAM'S CLAIM FOR TRADEMARK DILUTION IS**

4         **ADEQUATELY PLED.**

5         Defendants falsely claim that Dunham has alleged mere "labels and conclusions"

6    in support of his claim for Trademark Dilution, ignoring the fact that the Complaint is

7    replete with facts and allegations that Defendants' conduct has caused Dunham's

8    valuable and famous trademarks to be tarnished, i.e., "improperly associated with an

9    inferior or offensive product or service." *Wham-O, Inc. v. Paramount Pictures Corp.,* 286

10   F. Supp. 2d 1254, 1260 (N.D. Cal. 2003).  For example, Dunham alleges, among other

11   things, that (i) his "representatives have been informed by multiple fans and consumers

12   that *they believe Dunham is selling the Infringing Products and that he is wrongfully*

13   *attempting to profit from the COVID-19 pandemic* (he is not), which is causing material

14   harm to his brand and reputation every single day" (Compl. ¶ 42) (emphasis added), and

15   that (ii) this infringement through the sale of inferior and offensive products has

16   cheapened and diluted Dunham's brand (*see, e.g.*, Compl. ¶¶ 42, 67).  *See Adobe*

17   *Systems*, 125 F. Supp. 3d at 969-970 (**cited by Defendants and denying motion to**

18   **dismiss claim for trademark dilution** where the plaintiff pled almost exactly the same

19   allegations as Dunham does here). Defendants' Motion to Dismiss the Third Claim for

20   Relief should be denied.

21   **X.    CLAIM NO. 5: DUNHAM'S UCL CLAIM IS NOT PREEMPTED BY THE**

22        **COPYRIGHT ACT.**

23        As a preliminary matter, the fact that this claim is labeled "common law unfair

24   competition" and also contains a reference to California Business & Professions Code §

25   17200 ("Section 17200") is of no import, given that Dunham has alleged the essential

26

27

28

elements of both a common law and statutory claim in the Complaint.[6] Dunham alleges that Defendants have engaged in a campaign of unlawful, unfair, and deceptive acts that constitute unfair competition under Section 17200 and are not completely subsumed by the protections of the Copyright Act (including Defendants' misappropriation of Dunham's publicity rights). *See* Compl. ¶¶ 84-88, 108-126. Dunham has also alleged all the elements of a claim for common law unfair competition: he contends that (i) he has invested substantial time, skill, and money in developing his property (Compl. ¶¶ 2, 22, 24), (ii) Defendants appropriated and used the property at little or no cost (Compl. ¶¶ 3, 112, 119, 120), (iii) Dunham did not authorize or consent to that use and appropriation (Compl. ¶¶ 37, 100, 119, 120), and (iv) Dunham was injured by the appropriation and use (Compl. ¶¶ 2, 8, 41, 42, 86, 106, 114). *See City of Carlsbad v. Shah*, 850 F. Supp. 2d 1087, 1111 (S.D. Cal. 2012) (cited by Defendants, and recognizing that "[c]ommon law unfair competition is considered either synonymous with "passing off" one's goods as those of another, or analogous to passing off, by selling products confusingly similar to a competitor's products so as to exploit the competitor's reputation in the market").[7]

Further, because Dunham's UCL claim contains extra elements (including deception, exploitation of Dunham's reputation, and misappropriation of his rights of publicity in connection with *advertisements* for infringing products) which are separate and apart from what one must allege as part of a copyright infringement claim, it is not preempted by the Copyright Act. *See, e.g., Ticketmaster Corp. v. Tickets.com, Inc.*, 54 U.S.P.Q.2d 1344, *11 (C.D. Cal. 2000) (denying motion to dismiss unfair competition claim on preemption grounds, finding that "the claim also alleges the use of false

---

[6] *See, e.g., Sessions v. Chrysler Corp.*, 517 F.2d 759, 760-61 (9th Cir. 1975)("The fact that appellant mislabeled his cause of action against the individual defendants is irrelevant, so long as he was entitled to relief against them on any theory").

[7] In *City of Carlsbad*, the court found that the plaintiff had established claims for copyright infringement *and* both statutory and common law unfair competition in the same lawsuit. 850 F. Supp. 2d at 1101, 1111.

1  advertising, supplying the 'extra element' over and above copyright law"). Defendants'

2  Motion to Dismiss the Fifth Claim for Relief should be denied.

3  **XI.   CLAIM NOS. 10-11: DUNHAM'S PUBLICITY RIGHTS CLAIMS ARE**

4  **NOT PREEMPTED BY THE COPYRIGHT ACT.**

5        Defendants incorrectly contend that Dunham's claims for violations of his

6  statutory and common law rights of publicity are preempted by the Copyright Act

7  because they allegedly are based solely on Defendants' copying of works in which

8  Dunham claims copyright. This is just flat-out wrong, given that Dunham's

9  Tenth and Eleventh Claims for Relief allege that Defendants misappropriated *Dunham's*

10 name and likeness for commercial purposes *in advertisements* by displaying and

11 otherwise attempting to confuse the public, by posting *his name and likeness* on their

12 websites, (www.teechili.com; www.teechip.com), and by using *his name* in spam

13 *advertisements* to convince third parties to purchase infringing merchandise.  *See, e.g.,*

14 Compl. ¶¶ 37-38, 110-111, 119-121). These claims are not based on Defendants'

15 infringement of Dunham's copyrighted characters, nor are they based on the claim that

16 Dunham's name, image, and/or likeness are used in Infringing Products. To the contrary,

17 this a separate and independent claim based on Defendants' misappropriation of

18 Dunham's publicity rights in ***advertisements*** for Infringing Products. Dunham's publicity

19 rights are not preempted by the Copyright Act. *See, e.g.*, *Hoffman v. Capital Cities/ABC,*

20 *Inc.*, 33 F. Supp. 2d 867 (C.D. Cal. 1999) ("Plaintiff's own likeness and name cannot

21 seriously be argued to constitute a 'work of authorship' within the meaning of 17 U.S.C.

22 § 102.  Thus, copyright preemption does not apply.") (*overruled on other grounds*, 255

23 F.3d 1180 (9th Cir. 2001)); *see also* Thomas McCarthy, 2 *The Rights of Publicity and*

24 *Privacy* (2d Ed.) § 11:52 ("[T]he 'subject matter' of a right of publicity claim is not a

25 particular picture or photograph of plaintiff.  Rather, what is protected by the right of

26 publicity is the very identity or persona of the plaintiff as a human being").

27       The cases relied upon by Defendant are entirely inapposite. For example, the court

28 in *Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1012-13 (9th Cir. 2017) found that a

21

publicity-right claim may be preempted where an individual's likeness has been "captured in a copyrighted artistic visual work and the work itself is being distributed for personal use," but not where the claim "targets non-consensual use of one's name or likeness on merchandise or in advertising." *Id*. Here, unlike in *Maloney*, the crux of Dunham's claims is not the alleged use of a copyrighted work that contains Dunham's name, image, or likeness, but rather, Defendants' non-consensual use of Dunham's name, photograph, and likeness in connection with their ***advertising*** and sales of other products that infringe Dunham's copyrights.[8] For the foregoing reasons, the Motion to Dismiss Dunham's Tenth and Eleventh Claims for Relief should be denied.

## XII.   CLAIM NOS. 5, 10-11: CDA IMMUNITY IS NOT THE PROPER SUBJECT OF A MOTION TO DISMISS AND DUNHAM'S STATE LAW CLAIMS ARE NOT BARRED BY THE CDA.

At the outset, Defendants' assertion of immunity under the Communications Decency Act ("CDA") is not a proper basis for granting a motion to dismiss. The Ninth Circuit has clarified that CDA § 230 immunity is a fact-based affirmative defense that is not the proper subject of a Rule 12(b)(6) motion. *See, e.g., Swift v Zynga Game Network, Inc.*, 2010 WL 4569889, *6 (N.D. Cal. 2010) ("Given the limited nature of a Rule 12(b)(6) challenge, the Court cannot determine, at this stage, whether [Defendant] is entitled to CDA immunity. It would be improper to resolve this issue on the pleadings and the limited record presented."); *Perfect 10, Inc. v. Google, Inc.*, 2008 WL 4217837, *8 (C.D. Cal. 2008) ("preemption under the CDA is an affirmative defense that is not proper to raise in a Rule 12(b)(6) motion"). Defendants' Motion to Dismiss should be denied on this basis alone.

Further, Defendants' claim of CDA immunity is based solely on their entirely unsupported, "beyond the pleadings" theory that they are just a passive internet service

---

[8] *Fleet v. CBS, Inc.*, 50 Cal. App. 4th 1911 (1996) is inapposite for the same reason, as the plaintiffs' publicity rights claims were found to be based *solely* on defendants' distribution of *copyrighted works containing plaintiffs' images*.

provider and that Dunham's state law claims are based solely on the conduct of third parties (*see* MTD at 30:20-21), which (as explained throughout this Opposition) is false, and is belied by the well-pled allegations of the Complaint. Dunham contends that Defendants are not a passive, innocent internet service provider, but instead, played a direct role in the infringement of his intellectual property (Complaint, ¶¶1-2, 17, 33, 35, 36), and Dunham's claims are not based solely on the conduct of third parties (as Defendants falsely allege). (*Id.*). For this reason, Defendants' reliance on cases such as *Parts.com, LLC v. Yahoo! Inc.*, 996 F. Supp. 2d 933, 939 (S.D. Cal. 2013) is entirely misplaced. There, the Court found that the internet search engine Yahoo! could rely on CDA immunity where the plaintiff failed to allege that Yahoo! had any involvement in the underlying infringement and deceptive trade practices (such as the creation of infringing or otherwise tortious advertising content).[9] As explained herein (and as alleged in the Complaint), that is not the case here. Defendants' Motion to Dismiss Claims 5, 10, and 11 should be denied accordingly.

## XIII. NO PORTIONS OF DUNHAM'S PRAYER FOR RELIEF SHOULD BE STRICKEN.

### A. OoShirts Is Not an "Innocent Printer."

Defendants assert that Dunham is entitled to only injunctive relief because Defendants falsely classify themselves as an "innocent printer" of infringing material. As comprehensively alleged in the Complaint and as discussed herein throughout, Dunham has alleged that Defendants' conduct amounts to much more than simple "innocent printing" of infringing works, and that Defendants knew of, and/or acted with reckless disregard as to, the infringing nature of the products they advertised, promoted, created, manufactured, distributed, and sold. For example, Defendants are alleged to *create*,

---

[9] The same is true of *Evans v. Hewlett-Packard Co.*, No. C 13-02477 WHA, 2013 U.S. Dist. LEXIS 115856, at *9 (N.D. Cal. Aug. 15, 2013) (finding that, unlike here, the plaintiff did not allege that the defendants created any infringing or otherwise tortious content or played any role other than just hosting a site for third parties to present content).

*manufacture*, sell and distribute the products (Complaint, ¶¶1-2, 17, 33, 35, 36), advertise the products (*Id.*, ¶¶ 35, 36), configure their websites to lead consumers directly to the infringing products, including the creation of a "Jeff Dunham" section on the Defendants' website (*Id.*, ¶40), and after being notified by Dunham of infringing products on the Infringing Websites, removing and then putting back up the *same* and/or similar infringing products (*Id.* ¶90).

Further, though Defendants are proceeding as though their "innocent printer" defense has been conclusively established as a matter of law, it has not; this is the pleading stage, and Defendants will have the opportunity to present evidence in support of their defenses. *See e.g.*, *Gucci Am., Inc. v. Hall & Assoc.*, 135 F. Supp. 2d 409, 419 (S.D.N.Y. 2001) (relied upon by Defendants, and *denying* motion to dismiss that had been brought, in part, on the ground that the "innocent infringer" defense applied). Dunham is entitled to seek damages for Defendants' tortious conduct, and Defendants' Motion to Strike Dunham's Prayer for Relief should be denied.

### B.   Counterfeit Damages Are Proper.

Finally, Defendants falsely contend that Dunham failed to allege that Defendants used the counterfeit marks in connection with the sale or distribution of goods. Such contention is obviously false based on the face of the Complaint.[10] *See* Compl. ¶ 41 ("Defendants have profited from their unauthorized use of Dunham's intellectual property through the sale of the infringing goods, and Defendants' infringement has harmed Dunham by cheapening and diluting the Dunham brand, diverting profits from the sale of authentic Dunham goods, and causing Dunham and the Trust to lose profits and licensing fees from the authorized use of their intellectual property."); *Id.*, ¶ 57 ("Through their above-described actions, Defendants have used and continue to use in commerce a reproduction or copy of the Dunham Trade Dress and the Dunham

---

[10] Defendants' contention is also contradicted by Defendants' own admissions in the MTD itself. *See* MTD. p. 10 ("Defendants contend that Defendants marketed and sold allegedly infringing products.")

Trademarks and/or colorable imitations thereof that are confusingly similar to those marks in connection with the sale, offering for sale, distribution, or advertising of goods, which use is likely to cause consumer confusion, or to cause mistake, or to deceive."). Statutory damages are warranted by law, and Defendants' Motion to Strike Dunham's Prayer for Relief should be denied.

## XIV. **CONCLUSION**

For the foregoing reasons, Plaintiff Jeff Dunham respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety. To the extent that this Court is inclined to grant the Motion as to any Claim for Relief, Dunham respectfully requests leave to amend his Complaint accordingly.


Dated:  August 14, 2020                    LAVELY & SINGER
                                           PROFESSIONAL CORPORATION
                                           MARTIN D. SINGER
                                           T. WAYNE HARMAN
                                           JAKE A. CAMARA


                                    By:    /s/ Martin D. Singer
                                           MARTIN D. SINGER
                                           Attorneys for Plaintiff
                                           JEFF DUNHAM

25